## 46628. BROMLEY v. THE STATE.
### (380 SE2d 694)

Weltner, Justice.

A jury found Rudi Lee Bromley guilty of murder, kidnapping with bodily harm, aggravated assault, child molestation, and cruelty to children. He was sentenced to two concurrent life sentences and three concurrent sentences of twenty years each.[1]

1. Bromley contends the evidence fails to support the verdicts. Our review of the record discloses that the evidence, while circumstantial, is such that from it a rational trier of fact could have found Bromley guilty beyond a reasonable doubt of the crimes of murder, kidnapping with bodily injury, aggravated assault, child molestation, and cruelty to children.[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC

---

[1] The crimes were committed on August 29, 1987, and Bromley was indicted on September 30, 1987. His trial commenced on June 11, 1988, and concluded with five guilty verdicts returned by the jury on June 30, 1988. He was sentenced on July 1, 1988. His motion for new trial was filed on July 23, 1988, and was denied on September 9, 1988. Bromley's notice of appeal was filed on September 16, 1988. His appeal was docketed in this court on January 25, 1989, and his appeal was argued on April 10, 1989.

[2] The evidence shows that Bromley and the young female victim, aged ten or eleven, resided in the same trailer court a few doors away from each other. Late one afternoon the victim disappeared from the trailer court and was not seen again until her body was discovered four days later at a place about six miles from the trailer court. She had been abused sexually and beaten to death. Near the time of the victim's disappearance she was seen walking toward the trailer where she lived. Bromley was in the area and he beckoned the victim to him by crooking his finger. She approached him, and they had a brief conversation. The victim then left the area in a direction other than the one she had previously been going, and as the victim walked away she told a friend she was going somewhere for Bromley. About fifteen minutes later Bromley drove away from the area. The victim was not seen alive again. Following the realization that the young victim was missing from her home and from the trailer park, police, friends, and neighbors made inquiry of the residents of the trailer park as to her whereabouts and as to whether she had been seen. Bromley was asked several times if he had seen her, and on each occasion he denied knowing the victim. During an interview with an agent of the Federal Bureau of Investigation ten days after the victim's disappearance he continued to deny he knew the victim. Several pieces of what is commonly known as "duct" tape were found in the area near where the victim's body was discovered, and an

2781, 61 LE2d 560) (1979).

2. The victim's left thigh had on it what appeared to be a human bite mark. Dr. Thomas David, a forensic dentist, compared the bite mark with models of Bromley's teeth obtained from dental impressions and testified that in his opinion the two were consistent. On cross-examination David was asked if he had consulted with any other forensic dentists concerning this case. He replied: "Not to my recollection, I don't think."

Dr. Norman Sperber, a forensic dentist, was called as a witness for Bromley. He testified that about a month after the murder and about nine months before the trial commenced he was asked by David to examine photographs of a bite mark found on the victim's leg, and dental models of Bromley's teeth, and to give his opinion as to whether the two were consistent. Sperber further testified that he reviewed the materials and informed David that in his opinion the mark had not been made by Bromley's teeth and that he doubted the mark had been made by a human bite. The record is clear that the prosecution did not inform Bromley's attorneys of Sperber's existence or of his opinion. In his motion for new trial Bromley characterized David's testimony that he did not recall consulting with another dentist as "perjury," and asserts that the prosecution knowingly utilized this "perjured" testimony in an effort to secure guilty verdicts against him. Bromley further asserts that the failure of the prosecution to inform him of Sperber's opinion was a violation of the rule in *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

OCGA § 16-10-70 (a) provides: "A person to whom a lawful oath or affirmation has been administered commits the offense of perjury when, in a judicial proceeding, he knowingly and willfully makes a false statement material to the issue or point in question." The trial court held an evidentiary hearing on Bromley's motion for new trial, and in its order denying a new trial declined to find that David's testimony constituted perjury, even if the testimony were incorrect. We affirm the trial court.

Because Sperber testified as a witness for Bromley, his opinion concerning the inconsistency between the mark on the victim's leg and Bromley's teeth was known to Bromley and to his attorneys. There can be no harm when the material for which pretrial disclosure is sought is known to or is in the possession of the defendant. The

---

expert from the Department of Forensic Sciences testified that these pieces of duct tape and a piece of duct tape taken from Bromley's trailer at one time had been part of one continuous length or piece of tape. Synthetic fibers removed from the duct tape were consistent with fibers from the carpeting of Bromley's vehicle. Adhesive found on the victim's leg was consistent with the adhesive from the pieces of duct tape found near the victim's body. The mark on the victim's leg may have been consistent with the model of Bromley's teeth made from dental impressions obtained from Bromley.

failure to disclose, under these circumstances, was harmless. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

3. Bromley contends that his motions to suppress evidence seized pursuant to search warrants should have been granted. There were nine search warrants, each based on sworn affidavits. Bromley contends that none of these search warrants were valid, principally because the supporting affidavits failed to establish probable cause in that they failed to reveal the informants' "basis of knowledge" and "veracity" or "reliability." The affidavits in this case were prepared and sworn to by police officers and contained, in large part, statements given to the police who were investigating the case by citizen witnesses who lived in the trailer park from which the child victim disappeared and where Bromley lived. Bromley urges that the court apply the tests delineated in *Aguilar v. Texas*, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964), and *Spinelli v. United States*, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969). In *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), the United States Supreme Court departed from this test, holding:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for. . .conclud[ing]' that probable cause existed.

Id. at 2332.

In *State v. Stephens*, 252 Ga. 181, 184 (311 SE2d 823) (1984), this court adopted the rule of *Illinois v. Gates* with the admonition: "Prudence counsels that *Gates* be considered as the *outer limit* of probable cause."

In response to Bromley's motion to suppress, the trial court conducted a hearing and issued a lengthy and well-reasoned order denying the motion, and finding probable cause for the issuance of the warrants. The trial court did not err in overruling the motion to suppress. *State v. Luck*, 252 Ga. 347, 348 (312 SE2d 791) (1984).

4. Before his arrest, Bromley was contacted by Deputy Sheriff Attaway, who was in charge of the murder investigation. Attaway testified that he asked Bromley if he would be willing to submit to a polygraph examination by the Georgia Bureau of Investigation. Bromley moved for a mistrial, which was denied. This statement clearly was improper. The trial court then offered to give curative in-

structions to the jury. Bromley objected to the giving of the instructions, and they were not given. Because curative instructions were offered and refused, Bromley cannot now complain of the testimony. *Jones v. State*, 250 Ga. 166, 168 (296 SE2d 598) (1982). Under these circumstances, the denial of the motion for a mistrial was not an abuse of discretion. *Conklin v. State*, 254 Ga. 558, 568 (331 SE2d 532) (1985).

5. Agent Rackliff of the Federal Bureau of Investigation gave testimony concerning an interview he had with Bromley before Bromley's arrest but after he had become suspect. Bromley was requested to participate in the interview, and he appeared voluntarily. Before the interview began Bromley was advised of his *Miranda* rights, including his right to counsel and his right to have counsel present during the interview. Bromley volunteered that he had been in contact with an attorney prior to coming to the interview. He was once again advised that he could have his attorney present during the interview. There was no objection to Rackliff's testimony concerning Bromley's statement that he had been in contact with an attorney.[3] Rackliff testified about the details of his interview with Bromley, most of which dealt with Bromley's activities on the date of the victim's disappearance. He concluded his testimony with the following:

> I talked to the defendant from the standpoint of what I suggested that he do if he were responsible for her death, and he listened, and I did most of the talking. But the discussion I had at that point was about my feelings of his considerations if he were in fact involved in killing Amy Holman.
>
> Q. And what was his response to that?
>
> A. He acknowledged that he understood what I was saying. He agreed to seek help.

Bromley moved for a mistrial, and the motion was denied. However, the trial court instructed the jury to disregard the statement: "He agreed to seek help."

---

[3] At a *Jackson v. Denno* hearing, the trial court made the following statement: "The court has looked at this issue in anticipation of this matter coming up, and the authority seems fairly clear that . . . the request for counsel or a request for an opportunity to talk with counsel is not a matter that may be inquired into in the presence of the jury." Rackliff's testimony (i.e., that Bromley volunteered that he had consulted an attorney) did not violate the court's direction, as there was no "request for counsel or request for an opportunity to talk with counsel" during that interview. There being no such request, there was no forbidden comment.

(a) Bromley contends that the help he agreed to seek was the help of an attorney, and that the jury should not have been permitted to hear testimony that he wanted or intended to consult with a lawyer, because the inference likely to be drawn by a juror is that a suspect who consults an attorney is guilty. We are not certain that reasonable jurors would have understood the remark attributed to Bromley in such a manner, or that, had they done so, it would have given rise to an inference of guilt on Bromley's part. In any event, the giving of curative instruction by the trial court was an appropriate disposition of the matter. It was not error to deny the motion for mistrial. *Chancey v. State*, 256 Ga. 415, 435 (349 SE2d 717) (1986).

(b) Bromley further contends that Rackliff's testimony included an expression of an opinion as to Bromley's guilt. We have reviewed Rackliff's trial testimony as heard by the jury and can find no expression of opinion as to guilt offered by this witness.

6. At trial, a nine-year-old female who had lived with her parents in the same trailer park as Bromley testified that on numerous occasions she and Bromley had sexual intercourse. She testified that when Bromley wanted her to join him he would beckon her by crooking his finger at her. A ten-year-old female who also lived in the trailer park testified that on four occasions Bromley had exposed himself to her. The testimony of these two witnesses was objected to by Bromley on the ground that it placed his character in issue improperly, and that it was evidence of independent, unindicted crimes introduced solely for prejudicial effect.

> This broad prohibition [against using character evidence to prove conduct] includes the specific and frequently invoked rule that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is introduced for some purpose other than to suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial.

McCormick on Evidence (3rd ed. 1984) § 190, pp. 557-558 (footnotes omitted).

> To render evidence of other criminal acts of the defendant admissible, the state must show that the defendant was the perpetrator of the independent crime, and that there is a sufficient similarity or connection between the extrinsic offense and the crime charged such that proof of the former tends to prove the latter. [Cits.] If these conditions are satisfied, evidence of the extrinsic offense may be admitted to

prove, among other things, the defendant's identity, motive, intent, plan or scheme, and course of conduct. [Cits.]

*Wright v. State*, 253 Ga. 1, 3 (316 SE2d 445) (1984).

The evidence of Bromley's sexual intercourse with one young female and of the exposure of himself to another young female is of such a nature that proof of these acts tends to prove his commission of the crimes of which he was convicted. The trial court did not err.

7. Bromley assigns error to the trial court's limiting cross-examination of the nine-year-old sexual abuse victim and members of her family for the purpose of attempting to show that someone other than Bromley had sexual relations with the child. The trial court allowed Bromley a limited cross-examination of these witnesses out of the presence of the jury to determine if the proposed cross-examination should be allowed. This proffer by Bromley was insufficient to establish any substantial reason to believe that the nine-year-old child had been abused sexually by anyone other than Bromley. "The defense is entitled to a thorough cross-examination; however, the scope of cross-examination is within the sound discretion of the trial court and will not cause reversal unless the discretion is abused." *Chastain v. State*, 257 Ga. 54, 55 (354 SE2d 421) (1987). We find no abuse of discretion.

8. Bromley contends it was error to allow into evidence grotesque slides and photographs of the partially decomposed body of the child victim. "A photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant." *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983). There was no error.

*Judgment affirmed. All the Justices concur, except Gregory, J., who dissents.*

DECIDED JUNE 30, 1989 —
RECONSIDERATION DENIED JULY 27, 1989.

*Whitmer & Law, James H. Whitmer, G. Hammond Law III,* for appellant.

*C. Andrew Fuller, District Attorney, Lee Darragh, William M. Brownell, Jr., Leonard C. Parks, Jr., Assistant District Attorneys, Michael J. Bowers, Attorney General, Leonora Grant,* for appellee.