## A97A2011. FOGARTY v. THE STATE.
(497 SE2d 628)

POPE, Presiding Judge.

On August 31, 1994, a 12-count indictment was filed against defendant Mark Joseph Fogarty. Count 1 accused defendant of kidnapping Jaymie Flood; Count 2 accused him of aggravated assault against Flood; Count 3 alleged that defendant had stalked Connie Johnson; Count 4 accused defendant of simple battery against Melanie Harty; Count 5 alleged that defendant had stalked Harty;

Count 6 accused defendant of stalking Karen Rogers; and Counts 7 through 12 accused defendant of stalking five other women. A jury convicted defendant on Counts 1 through 6, and defendant was acquitted on Counts 7 through 12. Following the denial of his motion for a new trial, defendant appeals. We affirm.

1. Construed in a light most favorable to the verdict, the evidence presented by the State in this case, including the testimony from each of the victims of Counts 1 through 6, which contained their positive identification of defendant as the perpetrator of the individual crimes alleged in those counts, was clearly sufficient for any rational jury to conclude that defendant was guilty of having committed the crimes for which he was convicted under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial, defendant filed a request with the State for the production of exculpatory material pursuant to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). In his first enumeration, he contends that he is entitled to a new trial based on the State's failure to fully comply with his request. Specifically, defendant contends he is entitled to a new trial because the State suppressed (1) information concerning a latent fingerprint found on the passenger door of Flood's car; (2) police reports and interviews taken from several of the victim witnesses and other witnesses which could have been used for impeachment purposes at trial and which would have alerted defendant to the fact that some of the victims alleged that the perpetrator was driving a red truck when he could demonstrate that he had no access to such a truck; and (3) lead sheets prepared by the police after a composite picture of the suspect in several of the crimes was broadcast on the news. We cannot agree.

With respect to the fingerprint, the record clearly demonstrates that in response to defendant's *Brady* request, the State sent defendant a copy of a crime lab report on the print showing a negative identification with regard to defendant, thereby fulfilling its obligation to defendant. A review of the police reports and interviews that the State admittedly did not supply to defendant reveals that, for the most part, they contain information that defense counsel already knew, including the information concerning the purported use of a red truck in the incidents alleged in Counts 1, 2, 8, 11 and 12. The requirements of *Brady* are not applicable to evidence about which a defendant already has knowledge. See *Bromley v. State*, 259 Ga. 377, 378-379 (2) (380 SE2d 694) (1989). To the extent those reports and interviews contain statements about which defense counsel did not know, which created contradictions as to any witness's trial testimony, we note that any such contradictions created by the statements were minor. As such, even when we consider the State's failure

to produce the abovementioned reports and interviews along with its admitted failure to produce lead sheets apparently created by the police, the import of which is left to mere speculation and conjecture in this case, we reach the conclusion that the defendant is not entitled to a new trial because there is no "reasonable probability" that the State's production of the abovementioned documents would have brought about a different result in defendant's trial. *Kyles v. Whitley*, 514 U. S. 419 (115 SC 1555, 131 LE2d 490, 496-497) (1995).

3. Defendant contends that he is entitled to a new trial in this case based on his trial counsel's ineffectiveness. Specifically, he argues that the fee agreement he entered into with trial counsel constituted a contingency fee contract that created a conflict of interest that adversely affected his counsel's performance. Under the fee agreement, trial counsel's fee of $25,000 was to be paid upfront. However, pursuant to the agreement, if the charges against defendant were dismissed and a new suspect identified, the fee would be reduced to $10,000.

Clearly defendant is correct that such an agreement constitutes a contingency fee contract in a criminal case and is improper. Defendant also is correct in his assertion that the fee agreement created an actual conflict of interest for his trial counsel in that it made it more lucrative for trial counsel not to pursue avenues that might lead to dismissal of the charges against defendant and the identification of a new suspect. Having said this, however, we disagree with defendant that this conflict of interest requires a finding of ineffective assistance and a new trial.

"To establish ineffective assistance of counsel due to a conflict of interest on the part of trial counsel, a defendant who raised no objection at trial [as is the case here] must prove that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." (Citations and punctuation omitted.) *Ney v. State*, 227 Ga. App. 496, 500 (4) (a) (489 SE2d 509) (1997). As set forth above, defendant has clearly demonstrated an actual conflict of interest in this case. But the record in this case does not establish that his trial counsel's performance in the case was adversely affected by the conflict.

The record reveals that trial counsel investigated the case on his own and by hiring an independent investigator to look for leads in the case and attempt to locate other suspects, which is what the investigator did. Based on the above investigation, counsel appeared to be well informed at trial, as is evident by his thorough cross-examination of the State's witnesses and his own direct examination of defendant's witnesses. Counsel attempted to have witnesses interviewed and also filed a pre-trial discovery motion in the case seeking to find exculpatory evidence on behalf of his client. When he did not

receive any lead sheets from the State pursuant to his discovery request, he specifically inquired about the lead sheets, at which time he was informed they did not in fact exist. This was believable, in light of the district attorney's admission during the motion for new trial hearing that such lead sheets often were destroyed. Defense counsel also met on a regular basis with the district attorney and, during those meetings, pursued informal requests for the State to dismiss what defense counsel believed were the weakest charges against defendant. The State, however, refused. Counsel further pursued informal discovery during these meetings.

Trial counsel's strategy in this case was to demonstrate to the jury that defendant had alibis concerning most of the crimes for which he was indicted. He hoped that if the jury believed defendant's major alibi, which was his purported absence from the state during several of the crimes alleged in the indictment, a domino effect would occur that would result in defendant's acquittal on all charges. Because of this planned strategy, which appears to have been quite successful, defense counsel did not file any pre-trial motion seeking to have the State set forth firm dates for each of the incidents alleged in the indictment and to have such dates made material parts of the indictment. Counsel was afraid such a motion might allow the State to hone in on his alibi defense. Counsel also decided not to file any pre-trial motion to sever in light of this strategic plan. Such decisions based on trial strategy and tactics do not equate to ineffective assistance of counsel. *Ney*, 227 Ga. App. at 499 (4); *White v. State*, 193 Ga. App. 428, 430 (2) (387 SE2d 921) (1989).

In light of defendant's failure to demonstrate that his trial counsel's performance was adversely affected by the actual conflict of interest created by the fee agreement in this case, or that any alleged deficient performance prejudiced his defense, we cannot say that the trial court's determination that defendant was not entitled to a new trial based on ineffective assistance of counsel was clearly erroneous. Accordingly, we must uphold the trial court's determination as to that issue. *Riser v. State*, 222 Ga. App. 348, 349 (474 SE2d 632) (1996).

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED MARCH 10, 1998 ▪▪▪▪▪▪▪▪

*Rich & Smith, Randolph G. Rich, David L. Whitman*, for appellant.

*Daniel J. Porter, District Attorney*, for appellee.