S98G0916. FOGARTY v. THE STATE.
(513 SE2d 493)

CARLEY, Justice.

Mark Joseph Fogarty was arrested and charged with kidnap-

ping, aggravated assault, simple battery and nine counts of stalking. Acting without Fogarty's knowledge, his wife entered into an agreement to pay defense counsel's $25,000 fee in advance, but it was further agreed that, if the charges were dismissed and a new suspect identified, then the fee would be reduced to $10,000. The charges against Fogarty were not dismissed, and the case proceeded to trial. A jury acquitted Fogarty of six of the stalking counts, but found him guilty of the six other counts. Fogarty urged on appeal that the fee agreement created a conflict of interest which adversely affected his attorney's performance. The Court of Appeals found that the agreement was an improper contingency fee contract which "created an actual conflict of interest for his trial counsel in that it made it more lucrative for trial counsel not to pursue avenues that might lead to dismissal of the charges against [Fogarty] and the identification of a new suspect." *Fogarty v. State*, 231 Ga. App. 57, 59 (3) (497 SE2d 628) (1998). However, the Court of Appeals affirmed Fogarty's convictions, concluding that he had failed to show that the fee arrangement had any adverse effect upon defense counsel's performance. We granted certiorari to review this holding of the Court of Appeals. We conclude that, although the Court of Appeals proceeded upon an erroneous premise, Fogarty's convictions must be affirmed when the proper legal analysis is applied.

To prevail on an ineffective assistance of counsel claim, the defendant must show that his trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). There is no doubt that an attorney who has a conflict of interest with his client "breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Strickland v. Washington*, supra at 692 (III) (B). However, "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Strickland v. Washington*, supra at 692 (III) (B). In those instances wherein the defendant's right to counsel is denied altogether, a per se presumption of prejudice to the defense applies. "Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. [Cit.]" *Strickland v. Washington*, supra at 692 (III) (B). We have applied this per se presumption in the "unique" situation in which trial counsel "occupied the job of criminal defense attorney and law clerk in the same court *at the same time*." (Emphasis in original.) *Sallie v. State*, 269 Ga. 446, 448 (2) (499 SE2d 897) (1998). However, a more "limited" presumption of prejudice applies with regard to the usual conflict of interest claim. *Strickland v. Washington*, supra at 692 (III) (B). As to those claims, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest

adversely affected his lawyer's performance.' [Cit.]" *Strickland v. Washington*, supra at 692 (III) (B). Thus, the entire focus in such a case is upon the adequacy of counsel's performance, rather than upon actual prejudice to the defense. See *Cuyler v. Sullivan*, 446 U. S. 335, 348 (IV) (B) (100 SC 1708, 64 LE2d 333) (1980); *Dukes v. Warden*, 406 U. S. 250 (92 SC 1551, 32 LE2d 45) (1972); *Glasser v. United States*, 315 U. S. 60 (62 SC 457, 86 LE2d 680) (1942). If a conflict of interest is shown to have an actual adverse effect on the representation afforded by counsel, it is presumed that the defendant was prejudiced, and actual prejudice to the defense need not be proven. "Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. [Cit.]" *Cuyler v. Sullivan*, supra at 349-350 (IV) (B). In other words, the defendant "need not show that the result of the trial would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. [Cit.]" *McConico v. Alabama*, 919 F2d 1543, 1548 (11th Cir. 1990).

"But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. [Cit.]" *Cuyler v. Sullivan*, supra at 350 (IV) (B). According to the Court of Appeals, Fogarty met this threshold requirement by showing that his trial counsel contracted for an improper contingency fee. The "critical element" in a contingency fee contract "is that there be some chance that the lawyer will not receive the fee because the representation ends with an unwanted result for the lawyer's client." Wolfram, Modern Legal Ethics, § 9.4.1, p. 526 (1986). "Public policy properly condemns contingent fee arrangements in criminal cases, largely on the ground that legal services in criminal cases do not produce a res with which to pay the fee." Georgia State Bar Rule 3-102, Ethical Consideration 2-20. Here, counsel agreed to provide Fogarty a complete defense for a fee of $25,000, and this fee was in no way contingent upon a successful final outcome of the criminal proceedings. Counsel was entitled to that fee even if the case went to trial and the trier of fact ultimately found Fogarty guilty. The only contingency contemplated by the agreement was the possible termination of the criminal proceedings short of disposition by trial. Should the case against Fogarty be dismissed rather than tried, counsel would be entitled to retain only $10,000 of the contemplated $25,000 fee. However, the fact that the agreement specified both a greater and a lesser fee, dependent upon the extent to which counsel's services would be required to provide Fogarty with a complete defense, does not make it an improper contingency fee contract. "[A]n agreement for payment of one amount if the case is disposed of without trial and a larger amount if it pro-

ceeds to trial is not a contingent fee but merely an attempt to relate the fee to the time and service involved." Standards for Criminal Justice, Standard 4-3.3, commentary at 4-37 (2d ed., 1980).

Thus, there was no improper "all-or-nothing" contingency fee agreement providing that the lawyer would get paid *only* in the event that Fogarty prevailed. The contractual contingency simply related to the *amount* of the fee that the attorney would receive, not to his right to receive any fee at all. It is completely irrelevant that the agreement specified that the lesser fee would be earned in the event that the case against Fogarty was dismissed, since any termination of a criminal prosecution against a defendant short of trial is necessarily a favorable result for him. What is controlling is that the agreement did not provide that counsel would be paid only in the event that the case against Fogarty was dismissed or he was acquitted. Instead, the contract evidenced an unconditional agreement to pay one of two set and determined amounts as attorney's fees at one of two possible end stages of the criminal prosecution. Where, as here, compensation is ultimately dependent upon the amount of time actually invested in a case, it is always more lucrative for the attorney to pursue avenues which might result in a larger fee. However, that fact alone does not compel the conclusion that counsel has an actual conflict of interest with his or her client. Indeed, under the concept of an improper contingency fee agreement which was adopted by the Court of Appeals, a criminal defense attorney who agrees to accept an hourly fee would have an actual conflict of interest with the client, simply because it would be more lucrative to allow the case to go to trial than to seek to resolve it favorably for the client beforehand. As a professional, Fogarty's attorney is entitled to the strong presumption that he "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, supra at 690 (III) (A). Thus, the applicable presumption in this case is that he faithfully represented Fogarty, and that he did not intentionally overlook avenues of defense because it may have been to his financial benefit to do so.

A different analysis is not compelled because counsel was paid the $25,000 in advance and agreed to refund $15,000 if the charges were dismissed. A fee is often paid to counsel in advance, with the unearned balance, if any, refundable to the client. See generally *AFLAC v. Williams*, 264 Ga. 351 (444 SE2d 314) (1994). "[A] client may recover from an attorney where . . . the proprieties of the relationship demand the return of a portion of the fee paid. [Cits.]" *Greene v. McIntyre*, 119 Ga. App. 296, 298 (3) (167 SE2d 203) (1969).

> [V]irtually everyone advises criminal defense lawyers to get their whole fee up front, either as a flat fee for the entire

representation or in the form of a retainer against which their hourly rate will be offset. Any criminal representation in which the lawyer does not obtain full payment up front for the entire value of his services may thus turn out to be *practically* contingent: the lawyer is aware that there is a risk of nonpayment and that, if the client is convicted and sent to jail, there will often be no recourse.

(Emphasis in original.) Karlan, Contingent Fees and Criminal Cases, 93 Colum. L. Rev. 595, 600 (1993). Thus, it was no greater conflict of interest for the lawyer to accept the full $25,000 fee in this case, than it would be for him to contract for subsequent incremental payments at future stages of the case. In either event, counsel's financial incentive to go to trial rather than seek dismissal is precisely the same, and the only question is whether that financial incentive standing alone shows the existence of a conflict between his interest and that of the client. Payment of the full fee in advance, without more, is not a sufficient reason to dispense with the presumption that counsel performed as a professional representative of his client's legal interest, and to assume instead that he acted corruptly in accordance with his own financial interest.

Therefore, the Court of Appeals erred in its characterization of the contract with Fogarty's counsel as an improper contingency fee arrangement. The agreement resulted in a perfectly valid retention of counsel's services for the purpose of defending Fogarty against the criminal charges pending against him. Because there is no improper fee arrangement giving rise to any actual conflict of interest, there arises no presumption of any prejudice resulting from counsel's representation of Fogarty. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, Fogarty must satisfy the traditional test by showing that his trial attorney's performance was defective and that the defective performance prejudiced the defense. *Strickland v. Washington*, supra. Fogarty has not made such a showing. To the contrary, the record demonstrates defense counsel's effectiveness in that he successfully obtained an acquittal on six of the twelve counts against Fogarty. Thus, the Court of Appeals correctly affirmed Fogarty's convictions on the remaining six counts.

*Judgment affirmed. All the Justices concur, except Sears, J., who concurs specially.*

SEARS, Justice, concurring specially.

**Contingent**: Possible, but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which is itself uncertain, or questionable. Synonymous with

provisional. This term . . . implies that no present interest exists, and that whether such interest or right ever will exist depends upon a future uncertain event.[1]

As made clear by this definition, it would strain credulity to urge that the fee arrangement between Fogarty and his trial counsel — which provided for a fee of $25,000, payable in advance, to be reduced to $10,000 if the charges against Fogarty were dismissed and a new suspect identified — was not contingent. Counsel's $25,000 fee in this case was contingent upon Fogarty's prosecution proceeding to trial. If that contingency was not satisfied, then counsel would have been compelled to refund $15,000 already paid to him, reducing his fee by three-fifths. The majority opinion, therefore, should not be misunderstood for the proposition that the fee arrangement in this case was not contingent. Rather, the majority opinion must be read more narrowly — the fee arrangement in this case, although contingent, has not been shown to be improper.

The relevant ethical canons and commentaries based thereon establish two principles regarding contingency fee agreements in criminal cases: (1) It is absolutely prohibited to make an additional fee payment contingent upon the acquittal of an accused;[2] and (2) "An agreement for payment of one amount if the case is disposed of without trial and a larger amount if it proceeds to trial is not a contingent fee but merely an attempt to relate the fee to the time and services involved."[3] The absolute prohibition against making additional fees contingent upon acquittal is premised upon the fact that (as pointed out by the majority) in criminal cases, there is no res from which a contingent fee can be deducted,[4] and also upon concerns that such agreements may be detrimental to both the administration of justice and the best interests of criminal defendants.[5]

As noted, though, a criminal defense lawyer is permitted to structure his fees to provide for one amount if a case is resolved without going to trial, and another, larger amount if the case does go to trial. For this reason, criminal defense lawyers are allowed to set "escalating" fee scales, which typically specify one fee to shepherd a

---

[1] Black's Law Dictionary, p. 290 (5th ed. 1979).

[2] ABA Standards for Criminal Justice, Defense Function Standard 4-3.3; Rules and Regulations for the Government of the State Bar of Georgia ("Georgia Bar Rules"), Directory Rule 2-106 (c).

[3] Id.

[4] See Georgia Bar Rules, Ethical Consideration 2-20.

[5] See Moore, Jr. & O'Brien, *Of Clients & Fees: Ethical Issues for Criminal Defense Attorneys*, Georgia Bar Journal (February 1999) at p. 13 (noting concerns that such agreements could incite unscrupulous legal practitioners to usurp the truth seeking function of the criminal justice process).

case though its preliminary stages, and another fee which must be paid if the case actually proceeds to trial.[6] In these permissible "escalating" fee arrangements, whether a criminal defense lawyer is paid his or her highest fee is contingent upon the case going to trial. This same contingency also provided the basis for Fogarty's fee arrangement with his counsel. It is true that, unlike an "escalating" fee scale, Fogarty's fee arrangement required full payment in advance. However, I do not believe that distinction, standing alone, is sufficient to place the fee arrangement in this case within the scope of prohibited contingency agreements, and therefore I must conclude that Fogarty's fee arrangement with counsel fell within the limited scope of permissible contingency agreements in criminal cases.

DECIDED MARCH 8, 1999.

*Rich & Smith, Randolph G. Rich, David L. Whitman,* for appellant.

*Daniel J. Porter, District Attorney,* for appellee.

*John C. Pridgen, District Attorney, Cordele Circuit, Gregory R. Sturtevant, Assistant District Attorney, Clayton Circuit, Joseph L. Chambers, Sr., Davis, Zipperman, Kirschenbaum & Lotito, Nicholas A. Lotito, Summer & Summer, Daniel A. Summer, Elizabeth B. Reisman,* amici curiae.

---

[6] See ABA Standards for Criminal Justice, Standard 4-3.4.