A00A1004. PIKE v. THE STATE.
(538 SE2d 172)

SMITH, Presiding Judge.

This appeal arises out of a guilty plea entered by John Dexter Pike. In March 1995, Pike entered a nonnegotiated guilty plea on two counts of aggravated child molestation, one count of child molestation, one count of statutory rape, one count of enticing a child for indecent purposes, and one count of sexual exploitation of a child. He was later sentenced to the maximum term on each of these six counts, with each term to run consecutively, for a total of 121 years. He appeals, making two contentions.[1] First, he maintains that his plea was not knowingly and voluntarily entered, based on the prosecutor's misstatement of the maximum sentence he could serve during the guilty plea hearing. Under the limited circumstances of this case, we cannot agree with Pike that he is entitled to withdraw his guilty plea, despite the prosecutor's misstatement. Second, Pike argues that

---

[4] In fact, Vincent asserts that he need not show prejudice because the delay is "inherently prejudicial."

[1] Pike was granted leave to file an out-of-time appeal.

his counsel represented him under a conflict of interest. We do not agree, and we affirm.

1. We first address Pike's contention that he did not enter his plea with full knowledge of the consequences and therefore that the plea was not knowingly made.

During the plea hearing, the prosecutor informed Pike of the offenses with which he was charged, and Pike indicated his understanding that no agreement had been reached as to any sentence the State might recommend or the sentence he would actually receive. Pike was age 63 at the time of the guilty plea hearing. He acknowledged his understanding that the trial court could sentence him to the maximum possible punishment for each offense and that the sentences imposed on him could run consecutively to one another. The prosecutor advised Pike of the rights he was waiving by pleading guilty, and Pike stated that he understood he was giving up these rights. Pike further acknowledged his understanding that he was pleading guilty to two counts of aggravated child molestation, one count of child molestation, one count of statutory rape, one count of enticing a child for indecent purposes, and one count of sexual exploitation of a child. The prosecutor then stated the maximum sentences for each count and asked Pike if he understood that if the sentences were imposed to run consecutively, he could receive a sentence of 110 years in prison. Pike answered in the affirmative. Pike also stated that he had read the plea petition that was presented to the trial court, signed it, and understood it. Finally, he stated no one had threatened him, coerced him, or promised him any hope of benefit to enter the plea and admitted his guilt. The trial court entered the plea, finding that it had been freely and voluntarily given. The court delayed sentencing so that a presentence investigation could be conducted.

Several weeks later, on May 5, 1995, the court conducted Pike's sentencing hearing. During this hearing, the prosecutor stated that during the plea hearing, he had "possibly misstated some of the maximum punishments" and that he wished to correct any misstatements. He then stated the following maximum sentences: 30 years on each of the two counts of aggravated child molestation; 20 years on the child molestation count; 20 years on the statutory rape count; 20 years on the count of enticing a child for indecent purposes; and 12 months on the count of sexual exploitation of a child. The prosecutor told Pike during the sentencing hearing that if his sentences were imposed consecutively, he "could possibly receive a sentence of 121 years in prison. In the event that I misstated that earlier, I'm cor-

recting it at this time so that you will know."[2] Pike made no objection to this procedure and called two witnesses to testify on his behalf.

Pike then testified, admitting that he performed sexual acts on the nine-year-old victim on several occasions. He stated that he pled guilty so he "could spare" the victim and her family. He also admitted that after he was arrested but before arraignment, he fled the State of Georgia because his attorney had told him he "was going to prison for the rest of my life plus 70 years."[3]

Following Pike's testimony, the prosecutor requested the court to sentence Pike to the maximum term of 121 years. Defense counsel was allowed to make argument on Pike's behalf, and the trial court then gave Pike a "chance to tell me anything that you wish before sentence is imposed." Pike stated, among other things, that he "made a terrible mistake" and hoped the court would have mercy on him. The trial court then sentenced Pike to the maximum punishment on each count and imposed these sentences to run consecutively, for a total of 121 years.

On appeal, Pike argues that because the prosecutor misstated the maximum sentence during the guilty plea hearing, he was not accurately informed of the consequences of his plea and, therefore, his plea was not entered knowingly and voluntarily.

Once a defendant has raised an issue with regard to the validity of his or her plea, the State faces the burden of showing that the plea was made intelligently and voluntarily. *King v. State*, 270 Ga. 367, 369 (1) (509 SE2d 32) (1998). The State may do this by showing on the record of the guilty plea hearing that the defendant was aware of the rights he was waiving and the consequences of his plea, or the State may fill "a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary." (Citation and punctuation omitted.) Id. Furthermore, before accepting a guilty plea, a trial court must ensure that the defendant has been informed of the maximum possible sentences on the charges against him or her. See Uniform Superior Court Rule 33.8 (C) (2).

Although the State misstated the maximum sentence during the plea hearing in this case, we do not agree with Pike that reversal is required. After sentence has been pronounced, a defendant may

---

[2] During the earlier plea hearing, the prosecutor indicated that the maximum sentence on the count of enticing a child for indecent purposes was five years and that sexual exploitation of a child carried a five-year maximum sentence. The prosecutor's calculations during the plea hearing with respect to the remaining counts were the same as those calculations relayed during the sentencing hearing. The earlier misstatements of the maximum sentences regarding the counts of sexual exploitation and enticing a child for indecent purposes account for the discrepancy between the prosecutor's calculation of a maximum sentence of 110 years during the plea hearing and 121 years during the sentencing hearing.

[3] Pike was arrested in Texas in January 1995 and returned to this jurisdiction.

withdraw a guilty plea only upon a showing by the defendant that withdrawal is necessary to correct a "manifest injustice." USCR 33.12 (A). See also *State v. Evans*, 265 Ga. 332, 335-337 (3) (454 SE2d 468) (1995). And here, for several reasons, we cannot conclude that such a manifest injustice occurred. First, we note that Pike signed a petition to enter his plea indicating, among other things, that he understood the possible punishment and sentence he could receive and that he had knowledge of the maximum sentences that could be imposed upon him.

Second, before sentence was pronounced, Pike was entitled to withdraw his plea as a matter of right. OCGA § 17-7-93 (b). And before Pike was sentenced, the prosecutor made him aware of the fact that he had misstated the possible maximum sentences. Without objection and with knowledge of the maximum possible punishment he might face by entering a guilty plea, Pike called witnesses on his behalf and testified during his sentencing hearing. Also, although the trial court did not specifically ask Pike whether he wished to withdraw the plea, as noted above, the trial court did give Pike an opportunity to say anything "that you wish before sentence is imposed." With knowledge of the possible maximum sentence he could receive, Pike continued to participate in the sentencing hearing and was silent concerning the prosecutor's earlier misstatement, waiting until after his sentence was entered to complain that the plea was not made knowingly and voluntarily.

Finally, although Pike may not have been aware of the exact sentence he faced at the time he pled guilty, there is no doubt he knew or should have known he faced a sentence that realistically would have extended beyond his natural life. He was 63 at the time he entered his guilty plea, and he was informed on the record that the maximum sentence he could face was 110 years. Furthermore, Pike admitted that he left this jurisdiction before arraignment, because his attorney had told him he might be in jail for the rest of his life "plus 70 years." The record shows that Pike was aware of the possible severe consequences of his plea during the plea hearing, even if he was not aware of the *exact* maximum sentence. Given this fact, in addition to Pike's plea petition indicating his knowledge of the maximum possible sentence, as well as the fact that Pike continued with his sentencing hearing after being made fully aware of the exact possible consequences of pleading guilty, we cannot say that a manifest injustice exists in this case warranting withdrawal of his plea.[4]

---

[4] This case is distinguished from *King*, supra. In *King*, the Supreme Court concluded that the issue of the voluntariness of the defendant's plea could not be determined from the plea form alone. Id. at 371-372. Here, evidence exists in addition to the plea form signed by Pike showing that his plea was made knowingly and voluntarily. Consequently, the form is

We note that Pike testified during the hearing on his motion to withdraw his guilty plea that when he pled guilty, he believed that he would receive five years imprisonment or even a probated sentence. But this testimony was based on inadmissible hearsay. Moreover, Pike's testimony in this regard contradicted his acknowledgment at the earlier plea hearing that he understood he could receive 110 years in prison. This contradiction simply presented a matter of witness credibility, which the trial court was authorized to resolve against him. See *Manues v. State*, 232 Ga. App. 454, 455 (501 SE2d 826) (1998).

2. Pike also contends his trial counsel represented him "under a serious conflict of interest" and therefore that his conviction and sentence are illegal. We find no merit in this contention.

Pike correctly argues that after leaving public employment, a lawyer "should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving."[5] And here, defense counsel was employed by the district attorney's office at the time the charges were brought against Pike. But Pike stated during the plea hearing that he waived any possible conflict. Furthermore, defense counsel testified that when Pike retained him, he discussed his previous employment as an assistant district attorney with Pike's brother and with Pike. He also stated that when employed as a prosecutor, he never had any responsibility with respect to Pike's prosecution and never had any discussions with any prosecutor or staff member about the case. In fact, he stated that while working in the district attorney's office, he "possessed no knowledge of the case" and learned after he left the district attorney's office "that the file existed." Under these circumstances, we cannot conclude that defense counsel "had substantial responsibility" with respect to the prosecution of Pike's case requiring him to decline employment by Pike. Pike correctly notes that "a significant conflict of interest may prevent an attorney from providing . . . effective assistance." But here, a significant conflict did not exist. Nor has Pike demonstrated that his "counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." (Citation and punctuation omitted.) *Fogarty v. State*, 270 Ga. 609, 610-611 (513 SE2d 493) (1999).

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED AUGUST 10, 2000 ▮▮▮▮▮▮▮▮

but one of the factors we have considered in reaching our decision.
[5] State Bar Rule 3-109, Ethical Consideration 9-3.

■■■■■■■■■■■■■■■■■■

John D. Pike, *pro se.*
Stephen D. Kelley, *District Attorney*, Charles K. Higgins, *Assistant District Attorney*, for appellee.