**June 30, 2017**

# In the Court of Appeals of Georgia

A17A0060. GAY v. THE STATE.

McMILLIAN, Judge.

During the plea colloquy prior to the entry of this non-negotiated plea, the trial court misstated, in defendant Jerry L. Gay, Jr.'s favor, the range of possible sentence for armed robbery, leading trial counsel to speculate later with his client that the trial court may have been indicating that he was not inclined to impose life imprisonment. Although the trial court referred to the correct sentencing range before pronouncing judgment, the trial court should have permitted Gay to withdraw his guilty plea under the circumstances of this case. Accordingly, we now reverse the trial court's denial of Gay's motion to withdraw his guilty plea.

The standard for reviewing a denial of a motion to withdraw a guilty plea is well established. "After sentencing, the decision on a motion to withdraw a guilty

plea is within the trial court's discretion and withdrawal of the plea is allowed only when necessary to correct a manifest injustice." (Citations omitted) *Allen v. State*, 333 Ga. App. 853, 855 (3) (777 SE2d 699) (2015). "The test for manifest injustice will by necessity vary from case to case, but it has been said that withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges." Id. Once a guilty plea is challenged, the State generally bears the burden of showing affirmatively from the record that the defendant entered his plea knowingly, intelligently, and voluntarily and with an understanding of the nature of the charges and the consequences of entering the plea. *Maples v. State*, 293 Ga. App. 232, 234 (2) (666 SE2d 609) (2008); *Zellmer v. State*, 273 Ga. App. 609, 611 (2) (615 SE2d 654) (2005).

Gay was initially charged with malice murder, armed robbery, two counts of possession of a firearm during the commission of a felony, and possession of a firearm by a first offender probationer. After plea negotiations, Gay agreed to plea to voluntary manslaughter and armed robbery with the remainder of the charges to be dismissed. The State and Gay, however, were not able to agree to a sentence recommendation to present to the trial court. At the guilty plea hearing, it is

2

undisputed that the trial court asked Gay with respect to the armed robbery charge: "Do you understand that carries a penalty range of ten to 20 years in prison?" to which Gay responded in the affirmative.

After the guilty plea hearing but before sentencing, trial counsel realized that the trial court had omitted the potential of a life sentence in describing the sentencing range for armed robbery. Counsel also testified that he told Gay that the omission of the life sentence may indicate that the trial court was not going to impose a life sentence.[1] To counsel's credit, he brought the misstatement to the trial court's attention prior to the sentencing hearing about a month later. The trial court then began the sentencing hearing by addressing Gay as follows:

> You're in court today for sentencing in your case. I have reviewed a presentence investigation report in your case, and I've reviewed material that your attorney has sent to me on your behalf. One thing I do want to do before we get started this morning is to make sure I properly advised you of the sentencing ranges in your cases when we took your plea of guilty. I believe I informed you that the voluntary manslaughter carried a penalty term of not more than twenty years in state prison and armed

---

[1] Gay testified that he did not recall counsel speaking to him about the trial court's misstatement. However, the trial court in denying the motion to withdraw the guilty plea credited counsel's testimony that he had extensively discussed the correct sentencing range with Gay.

robbery carries a minimum mandatory of ten years and not more than twenty years or life. I just want to make sure I properly advised you of the sentencing range for both offenses.

The trial court then proceeded with the hearing, and after testimony from several witnesses, sentenced Gay to life imprisonment for the armed robbery and twenty years for the voluntary manslaughter. Two days later, Gay, through trial counsel, filed a motion to withdraw the guilty plea, which after amendment, was denied.

"As a matter of constitutional due process, before a defendant pleads guilty, the trial court must advise him of the 'direct' consequences of entering the plea[.]" *Smith v. State*, 287 Ga. 391, 394 (2) (a) (697 SE2d 177) (2010). "Direct consequences may be described as those within the sentencing authority of the trial court, as opposed to the many other consequences to a defendant that may result from a criminal conviction." Id. Clearly, the sentencing range is within the direct authority of the trial court and thus must be considered a direct consequence of entering the plea.

However, our Supreme Court has held that the failure to advise a defendant of the sentencing range does not invalidate the guilty plea "when [the defendant] makes no claim that he was disadvantaged by the omission or even that he was in fact unaware of the possible sentence which could be imposed." *Adams v. State*, 285 Ga.

4

744, 746-47 (3) (683 SE2d 586) (2009). See also *Hill v. Hopper*, 233 Ga. 633, 634 (212 SE2d 810) (1975). The Supreme Court has further held that withdrawal of the guilty plea was not required to correct a manifest injustice when the trial court omitted telling the defendant what the mandatory minimum sentence was, but counsel testified that he correctly advised the defendant about the length of her sentence. *Arnold v. State*, 292 Ga. 95, 97 (2) (734 SE2d 382) (2012).

But none of these cases are controlling here. A key factor in these cases is that the trial court's error, if any, was the omission of the sentencing range, instead of an affirmative misrepresentation, which is what happened here. See *Hill*, 233 Ga. at 634 ("nor has he alleged that the possible sentence was affirmatively misrepresented"). Also, in each case, our Supreme Court noted that the sentence was negotiated, and the defendants were sentenced according to the plea bargain, notwithstanding the failure of the trial court to describe the sentencing range on the record. *Adams*, 285 Ga. at 746 (3) ("Appellant entered a negotiated guilty plea and received the sentence for which he bargained."); *Hill*, 233 Ga. at 634 ("[Hill] has at no time claimed that the state made and breached any sort of plea bargain with him[.]"); see *Arnold*, 292 Ga. at 95 ("[p]ursuant to a negotiated plea").

5

In contrast, Gay's sentence was not negotiated, nor is this an "omission" or failure to inform case. Instead, the trial court misstated Gay's sentencing range for armed robbery, which led trial counsel to speculate and raise the hope in Gay that the trial court would not impose life imprisonment at sentencing. Although the trial court then referred to the correct sentencing range at the sentencing hearing, it is clear from the face of the transcript that the trial court did not acknowledge the error and instead appears to compound the misstatement by asking Gay to confirm that the trial court stated the correct sentencing range at the guilty plea hearing. *Cf. Pike v. State*, 245 Ga. App. 518, 519-20 (538 SE2d 172) (2000) (prosecutor drew defendant's attention to misstatements made about sentencing range, stated the correct ranges, and emphasized "I'm correcting it at this time so that you will know."). And even though it is true, as the dissent points out, that Gay knew from a previous hearing that he could withdraw his plea at anytime before he was sentenced, the trial court did not reiterate that right to Gay at the time the court "corrected" its earlier mistake. Further, although the dissent and the trial court in its order denying the motion both specifically rely on the testimony that Gay had been advised accurately by his counsel about the sentencing range, the issue in this case is not Gay's knowledge of the sentencing range. Instead, the misstatement gave Gay the false impression that the

6

trial court, who had the discretion to sentence within that range, may have been inclined to sentence him to twenty years instead of life.

For these reasons, Gay should have been allowed to withdraw his guilty plea to correct a manifest injustice, and the judgment of the trial court must be reversed and the case remanded for further proceedings consistent with this opinion.

*Judgment reversed. Barnes, P. J., Miller, P. J., Branch, Mercier, Reese, and Bethel, JJ., concur. Doyle, C. J., and McFadden, P. J., dissent.*

A17A0060. GAY v. THE STATE.

MCFADDEN, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion reversing the trial court's denial of Jerry Gay's motion to withdraw his guilty plea. The record shows that despite the trial court's misstatement regarding the sentencing range for armed robbery, Gay actually knew the range of possible sentences before, during, and after the entry of his guilty plea; that prior to sentencing, Gay's attorney informed the court of its mistake and suggested that the court correct it on the record; that the trial judge then corrected the mistake before the start of the sentencing hearing and Gay expressly acknowledged that he understood the corrected sentencing range; and that Gay then,

despite having been informed of his right to withdraw his guilty plea before sentencing, did not withdraw his plea and instead proceeded with the sentencing hearing. Under these circumstances, the trial court did not abuse its discretion in finding that Gay entered his plea with full knowledge of the possible consequences, including a life sentence, and yet still chose not to withdraw his plea prior to sentencing. Accordingly, there was no manifest injustice mandating that Gay be allowed to withdraw his knowing and voluntary plea after sentence was imposed.

> A ruling on a motion to withdraw a guilty plea lies within the sound discretion of the trial court and will not be disturbed absent a manifest abuse of such discretion. When the validity of a guilty plea is challenged, the [s]tate bears the burden of showing affirmatively from the record that the defendant offered his plea knowingly, intelligently, and voluntarily. The [s]tate must show that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea. After a defendant's sentence has been pronounced, his guilty plea may be withdrawn only to correct a manifest injustice. The test for manifest injustice will by necessity vary from case to case, but it has been said that withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges.

*Jones v. State*, 325 Ga. App. 845, 846 (2) (755 SE2d 238) (2014) (citation omitted).

In this case, the majority finds that the trial court's failure to inform Gay of the possibility of a life sentence at the plea hearing constitutes a manifest injustice

2

mandating that he be allowed to withdraw his plea. Indeed, if the court's mistake had in fact misled Gay and caused him to enter his guilty plea without actual knowledge of life as a possible consequence, it very well might have constituted a manifest injustice. But that is not what happened in this case. On the contrary, the record plainly shows that the trial court's mistake had no impact on Gay's entry of his guilty plea because in spite of the court's omission, which was corrected on the record before sentencing, Gay was fully cognizant of the fact that a life sentence was a possible consequence of his guilty plea to armed robbery.

At the hearing on the motion to withdraw the guilty plea, Gay's plea counsel testified that he had met with Gay at least 25 times prior to the plea hearing and that they had discussed the possible outcomes of his case many times, including the possibility of a life sentence for armed robbery. According to counsel, Gay "absolutely" knew before his plea that life was a potential sentence for armed robbery. Gay himself testified that he knew about the possible life sentence, confirming that prior to the plea hearing counsel had informed him of the possibility of a life sentence. Moreover, at the plea hearing, Gay submitted a signed waiver of rights form acknowledging that his attorney had discussed the case with him, that he understood the charges, and that he understood the maximum penalty the court could

3

impose. Thus, the evidence in the record clearly supports a finding that Gay knew a life sentence was a possible consequence before and during the entry of his guilty plea.

Furthermore, counsel testified that after the plea hearing and before the sentencing hearing, which was held over a month after the plea, he and Gay discussed the trial court's failure to mention the possibility of a life sentence at the plea hearing. Counsel said that during those discussions he had speculated that the court's misstatement might be an indication that it was not going to impose a life sentence, but that there was never a promise to cap the sentence at 20 years. Gay contradicted counsel's testimony, denying that after the plea hearing they had discussed the court's failure to mention the possibility of a life sentence. Given such conflicting testimony, the trial court was authorized to believe counsel's testimony over Gay's self-serving account. See, e.g., *Trapp v. State*, 309 Ga. App. 436, 438 (1) (710 SE2d 637) (2011) (Because credibility determinations are for the fact-finder to make, "the trial court was authorized to disbelieve [the defendant]'s self-serving testimony and to find that he knowingly, freely, and voluntarily entered the plea."). Thus, there is evidence supporting a finding that even after the trial court's misstatement at the plea hearing and before sentencing, Gay still knew that he faced a possible life sentence.

In addition to the above-recited evidence of Gay's knowledge of a possible life sentence, the record also shows that prior to the start of the sentencing hearing held weeks after the plea hearing, Gay's attorney actually brought to the court's attention its earlier misstatement at the plea hearing and suggested that the court needed to correct the omission of a possible life sentence on the record. The trial court did just that before starting the sentencing hearing, correcting the mistake on the record by informing Gay that the armed robbery charge carried a possible life sentence. Gay then acknowledged that he understood the sentencing range. Indeed, Gay later confirmed at his plea withdrawal hearing that the trial court, at the sentencing hearing, had corrected its previous error by stating that life was a possible sentence.

The majority discounts the trial court's correction of its mistake, finding that the correction compounded the mistake by asking Gay, before the start of the sentencing hearing, to confirm that the trial court had state the correct sentencing range at the guilty plea hearing. But this finding elevates semantics over the substance of the trial court's clear statement to Gay that life was a possible sentence for armed robbery. Contrary to the majority's finding, this court "do[es] not find error based on mere semantics." *Rodriguez v. State*, 280 Ga. App. 423, 424 (634 SE2d 182) (2006) (citation omitted) (affirming denial of motion to withdraw guilty plea where

5

plea form incorrectly stated maximum possible sentence and minimum sentence not properly described to defendant at plea hearing as a mandatory minimum).

After that correction informing Gay of a possible life sentence, Gay did not seek to withdraw his guilty plea, which he could have done as a matter of right before sentence was imposed. See OCGA § 17-7-93 (b). Indeed, at the earlier plea hearing, the court had expressly informed Gay of his absolute right to withdraw his guilty plea before sentence was pronounced, and Gay had stated that he understood his right to withdraw his plea before sentencing. Nevertheless, before the start of the sentencing hearing, after having clearly been informed by the court of the possibility of a life sentence for armed robbery, Gay did not attempt to withdraw his guilty plea and instead opted to proceed with the sentencing hearing. Gay then fully participated in the sentencing hearing, including the presentation of witnesses on his behalf and his own statement. Thereafter, the court announced the sentences, including the life sentence that Gay knew he could receive for the armed robbery.

Given the evidence in the record, it is clear that Gay was fully aware of the fact that he faced a possible life sentence for armed robbery before, during, and after entry of his guilty plea. It is clear that he was informed of his right to withdraw his plea at any time before sentence was imposed. It is clear that he understood the trial court's

correction of the mistake made at the plea hearing, acknowledging that he knew he faced a life sentence before the sentencing hearing. It is clear that despite that knowledge he still chose not to withdraw his guilty plea and instead to proceed with the sentencing hearing. And it is clear that he only sought to withdraw his plea after the life sentence, which he had known was a possible consequence of his plea, was in fact imposed.

Under these circumstances, the instant case is similar to *Pike v. State*, 245 Ga. App. 518 (538 SE2d 172) (2000). In *Pike*, the prosecutor misstated some of the possible maximum punishments at the defendant's guilty plea hearing, but corrected those mistakes several weeks later at the sentencing hearing. Id. at 519-520 (1). The defendant made no objection and did not seek to withdraw his plea after the corrections, and instead called witnesses and testified at the sentencing hearing, after which the trial court imposed the maximum sentences on each count. Id. at 520 (1). On appeal, this court affirmed the trial court's denial of the defendant's motion to withdraw his guilty plea, rejecting the argument that his plea was not knowing and voluntary because the prosecutor had misstated the maximum sentences at the guilty plea hearing. In so ruling, this court concluded:

> The record shows that [the defendant] was aware of the possible severe consequences of his plea during the plea hearing, even if he was not aware of the exact maximum sentence. Given this fact, in addition to [his] plea petition indicating his knowledge of the maximum possible sentence, as well as the fact that [he] continued with his sentencing hearing after being made fully aware of the exact possible consequences of pleading guilty, we cannot say that a manifest injustice exists in this case warranting withdrawal of his plea.

Id. at 521 (1) (footnote omitted).

Likewise, in the instant case, the court's misstatement about the sentencing range at the plea hearing does not constitute a manifest injustice requiring that Gay be allowed to withdraw his guilty plea because the record establishes that Gay actually knew before and after his plea, and prior to sentencing, that he faced a possible life sentence. See *Arnold v. State*, 292 Ga. 95, 97 92) (734 SE2d 382) (2012) (where counsel testified that he correctly advised defendant concerning the length of her sentence, defendant "has not demonstrated that she should be permitted to withdraw her plea to correct a manifest injustice"); *Wood v. State*, 190 Ga. App. 179, 181 (2) (378 SE2d 520) (1989) (any error in court's failure to fully inform defendant of sentencing possibilities was harmless because counsel satisfactorily explained consequences of plea). Because the trial court did not abuse its discretion in denying Gay's motion to withdraw his guilty plea, that ruling should be affirmed.

8

I am authorized to state that Chief Judge Doyle joins in this dissent.