A03A2404. CARTER v. THE STATE.
(593 SE2d 69)

RUFFIN, Presiding Judge.

In 1996, the State charged Robert Lewis Carter with murder, aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Later that year, Carter pled guilty to possession of a firearm by a convicted felon, and a jury found him guilty of voluntary manslaughter, as a lesser included offense of murder, and possessing a firearm during the commission of a crime. The jury acquitted Carter of murder and aggravated assault.

Although Carter failed to file a timely motion for new trial, the

trial court granted him permission to file an out-of-time motion for new trial in 2003. Following a hearing, the trial court denied the motion. Carter appeals, challenging the sufficiency of the evidence supporting the voluntary manslaughter conviction, several jury instructions, and his sentence. He also claims that he received ineffective assistance of trial counsel and that he was prejudiced by the delay in prosecuting his appeal. For reasons that follow, we affirm in part, reverse in part, and remand for resentencing.

1. In reviewing Carter's challenge to the sufficiency of the evidence, we construe the evidence in a light most favorable to the jury's verdict.[1] We do not weigh the evidence or assess witness credibility, but merely determine whether the evidence presented authorized the jury to find Carter guilty beyond a reasonable doubt.[2]

Viewed in this manner, the evidence shows that, on September 22, 1995, Carter returned home from a period of incarceration to find his wife, Patricia, living in their house with Bobby Walton. Following a confrontation, during which the police were called, Walton and Patricia moved to a nearby trailer park.

One week later, Walton and Patricia saw Carter emerge from the woods with a shotgun as they drove up to their trailer. According to Patricia, Carter pointed the gun at Walton, who had gotten out of the car, said " '[b]ye, bye,' " and shot Walton. Using the butt of the gun, Carter then broke the car window and pointed the gun at Patricia, who was still inside. When Carter threatened to shoot her, Patricia jumped out of the car and ran. Carter caught her, threw her against the trailer, and again pointed the gun at her. Patricia testified that the gun "snapped," but did not fire. Patricia grabbed the gun, and the two fought over the weapon until they heard police cars approaching. At that point, Carter fled.

Responding officers found Walton on the ground behind a car with a gunshot wound to the neck. Inside the car, which had a shattered window, police found broken glass. Police also discovered one spent shotgun shell a few feet from the car, and one live round on the ground near the trailer. Walton died from the shotgun wound.

Carter testified in his own defense. He admitted that, on the day of the shooting, he purchased shotgun shells, loaded his shotgun, oiled it, and went to the trailer park. According to Carter, he intended to confront his wife about a photograph he had received depicting Walton and Patricia in bed together.

Carter testified that, when he arrived at the trailer park, Walton and Patricia were not there, so he waited at the front door. Once Wal-

---

[1] See *Fuller v. State*, 262 Ga. App. 656 (1) (586 SE2d 359) (2003).
[2] See id.

ton and Patricia returned, Carter picked up the shotgun and informed Walton that he needed to speak to his wife. According to Carter, Walton told him to put the gun down, suggested that they fight, and approached him holding a soda bottle. As Carter described: "I didn't go there to fight him[, but] he just kept coming, and I raised the gun up and it went off. You know, I shot him." Carter did not dispute that he pulled the trigger. He further testified that, after the shooting, Patricia fought him for the gun. During that struggle, the car window was broken. Carter denied that he pointed the gun at Patricia.

The next morning, Carter turned himself in to the police. He admitted to police, and at trial, that he shot Walton. He testified, however, that he did so in self-defense. Carter explained:

I shot [Walton] because he would have beat[en] my brains out. . . . I believe that's what he would have [done]. And, physically, he would have beat[en] my brains out. If I had stood there with that gun and let him [take] it, he would have beat[en] my brains out and then he probably would be up here now instead of me.

Based on the evidence presented, the jury acquitted Carter of murder and aggravated assault on Patricia, but found him guilty of voluntary manslaughter and possession of a firearm during the commission of a crime.

On appeal, Carter argues that the State presented insufficient evidence to support the voluntary manslaughter conviction. He contends that the evidence established only that he acted in self-defense or accidentally shot Walton as he prepared to defend himself. We disagree.

A person commits voluntary manslaughter if he kills another under circumstances that would otherwise be murder, but "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person."[3] A jury determining whether an individual committed voluntary manslaughter or acted in self-defense must consider whether the defendant " 'was so influenced and excited that [he] reacted passionately rather than simply to defend [himself].' "[4]

Construed favorably to the verdict, the evidence shows that Carter loaded his shotgun, oiled it, approached Walton and Patricia from the woods as they arrived home, and shot Walton after stating, " '[b]ye, bye.' " From this evidence, the jury could find that the shoot-

---

[3] OCGA § 16-5-2 (a).
[4] *Riley v. State*, 250 Ga. App. 427, 428 (1) (551 SE2d 833) (2001).

ing was intentional, rather than accidental. Furthermore, although Carter asserted that Walton moved toward him aggressively, the jury was entitled to conclude that he was not justified in killing Walton.[5] Accordingly, the evidence was sufficient to sustain his conviction for voluntary manslaughter.

2. In his second enumeration of error, Walton argues that the trial court erred in instructing the jury that it could infer an intent to kill. The trial court charged the jury as follows:

> [I]f a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which the weapon is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill. However, whether or not you make any such inference is a matter solely within your discretion as the jury and fact finders.

In *Harris v. State*,[6] our Supreme Court determined that a trial court commits error by giving such a " 'use of a deadly weapon' " charge. Although *Harris* was decided after Carter's conviction, his case had not yet been directly appealed at the time of that decision. Thus, the rule announced in *Harris* applies here.[7]

The *Harris* rule, however, is subject to a harmless error analysis.[8] In this case, Carter presented a justification defense. And "[o]ne who asserts self-defense does not deny the intent to inflict the injury, but urges that the act was legally justified by a reasonable fear of immediate serious harm to oneself or another."[9] In other words, the defendant *admits* that he intended to kill, but claims that he was justified in doing so, rendering an "intent to kill" instruction harmless.[10]

On appeal, Carter argues that he raised both a justification defense *and* a defense based upon accident. Carter testified at trial that he did not remember pulling the trigger, and he told police that the gun "just shot." Based on this evidence, Carter argues that he presented the defense of accident. But Carter specifically testified that he acted in self-defense, not that the shooting was accidental. He also testified that, although the gun was old and rusty, he did not

---

[5] See id. at 428-429; *Leggon v. State*, 249 Ga. App. 467, 468 (1) (549 SE2d 137) (2001).

[6] 273 Ga. 608, 610 (2) (543 SE2d 716) (2001).

[7] See id. ("The new rule of criminal procedure which we announce in this case will be applied to all cases in the 'pipeline' – i.e., cases which are pending on direct review or not yet final.").

[8] See *Austin v. State*, 275 Ga. 346, 347-348 (2) (566 SE2d 673) (2002).

[9] Id. at 347.

[10] See id.

believe that there was anything wrong with it. Furthermore, Carter did not request a jury instruction on accident.

Under these circumstances, we cannot find that Carter presented a defense based on accident.[11] He focused instead on justification. It follows that the error created by the "use of a deadly weapon" charge does not require reversal.[12]

3. Carter also argues that the trial court erred in failing, sua sponte, to charge the jury on the defense of accident. "It is error to fail to give a charge on a defendant's sole defense, even where the defendant does not request the charge, if there is some evidence to support the charge."[13] As noted above, however, Carter based his defense on a claim of justification, not accident. Accordingly, this claim of error lacks merit.[14]

4. Despite counsel's success in securing acquittals on the murder and aggravated assault charges, Carter alleges that he received ineffective assistance of counsel at trial. To succeed in this claim, he must show that trial counsel's performance was deficient and that the deficiency prejudiced him.[15] In Georgia, "[t]here is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy."[16] Furthermore, to show prejudice, the defendant must establish that "but for counsel's unprofessional errors, the result of the proceeding would have been different."[17] We will affirm a trial court's determination that the defendant received effective assistance of counsel unless it is clearly erroneous.[18]

On appeal, Carter presents a litany of alleged deficiencies that he contends plagued counsel's performance. None supports reversal.

(a) Carter complains that trial counsel did not challenge the admissibility of his statement to police through a *Jackson-Denno*[19] hearing.

At the hearing on Carter's motion for new trial, counsel admitted that he did not request such a hearing. He explained that, based on his conversations with Carter, it appeared that Carter made the statement voluntarily, after waiving his *Miranda*[20] rights. Counsel

---

[11] See *Scott v. State*, 261 Ga. 611, 612 (1) (409 SE2d 511) (1991).

[12] See *Austin*, supra.

[13] *Alexis v. State*, 273 Ga. 423, 426 (4) (541 SE2d 636) (2001).

[14] See id.; *Scott*, supra.

[15] See *Cooper v. State*, 258 Ga. App. 825, 833 (7) (575 SE2d 691) (2002).

[16] (Punctuation omitted.) Id.

[17] (Punctuation omitted.) Id.

[18] See id. at 833-834.

[19] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[20] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

also determined that the statement would be helpful to Carter's defense, which revolved around justification and the theory of provocation.

The evidence shows that counsel made a tactical decision not to object to the admissibility of Carter's statement. The fact that Carter and his appellate counsel now question those tactics does not require a deficiency finding.[21] Furthermore, Carter has made no effort on appeal to show, or even argue, that his statement would have been excluded had a *Jackson-Denno* hearing taken place.[22] We recognize that Carter asserted at the new trial hearing that he requested, but was denied, counsel during his interview with police and that portions of his confession were not recorded. But as the factfinder at the hearing, the trial court was entitled to disbelieve him.[23]

(b) Carter also alleges that trial counsel was deficient in failing to have the shotgun examined to determine whether it misfired. Trial counsel testified, however, that he did not recall Carter ever indicating to him prior to trial that the shooting was an accident. Thus, at the time of trial, counsel did not believe that a gun examination was necessary, and he focused on the self-defense and provocation theories. Counsel further stated that, had Carter told him that the gun misfired or malfunctioned, he would have followed up on that defense.

Although counsel agreed at the hearing that, in retrospect, examining the gun would have been in Carter's "best interest," the reasonableness of counsel's conduct must be "viewed at the time of trial and under the circumstances of the case."[24] We further note that Carter presented no evidence that an examination of the gun would have produced evidence supporting an accident defense. And he clearly testified at trial that he not only acted in self-defense, but that the gun was not broken. Accordingly, the trial court did not err in rejecting this claim.

(c) Next, Carter asserts that counsel was appointed to represent him only five days before trial and should have requested a continuance. In essence, Carter claims that counsel was not prepared for trial.

At the new trial hearing, counsel could not recall the exact date of his appointment, but was certain that he took over the case more than five days prior to trial. He further testified that he spent approximately 40 hours preparing for trial. He interviewed several

---

[21] See *Byrd v. State*, 274 Ga. 58, 60-61 (2) (548 SE2d 2) (2001).

[22] See *Causey v. State*, 215 Ga. App. 723, 727 (10) (a) (452 SE2d 564) (1994).

[23] See *Byrd*, supra at 61.

[24] (Punctuation omitted.) *Washington v. State*, 276 Ga. 655, 658 (3) (581 SE2d 518) (2003).

witnesses, visited the scene, and talked extensively with Carter. When trial began, he felt sufficiently prepared, and he did not recall Carter asking him to move for a continuance. On the contrary, counsel remembered that Carter was "quite anxious to get to trial," which factored into his decision not to seek a further delay.

Like the trial court, we conclude that trial counsel was adequately prepared for trial. We note that, based on his investigation, counsel developed a successful defense to both the murder and aggravated assault charges, obtaining a not guilty verdict on both. Accordingly, the trial court did not err in rejecting Carter's ineffective assistance claim on this ground.[25]

(d) Carter contends that trial counsel was deficient in failing to interview and subpoena three witnesses: Vanessa Clark, Yekell Carter, and Daniella Carter. Neither Yekell Carter nor Daniella Carter testified at the hearing on the motion for new trial. Accordingly, Carter offered no probative evidence that these individuals would have testified at trial or offered evidence helpful to his case.[26] Thus, he cannot show a reasonable probability that these witnesses' testimony would have resulted in a different verdict.[27]

Vanessa Clark apparently died before the motion for new trial hearing and could not testify for Carter at the hearing. Trial counsel could not recall whether Carter informed him about Clark, who allegedly saw Walton throwing bricks at Carter at the time of the shooting. Counsel testified, however, that he and Carter discussed calling witnesses at trial, but he ultimately decided, with Carter's consent, not to introduce any evidence so that he could preserve the right to open and conclude final arguments. Furthermore, according to Carter, counsel stated at trial that he would not call Clark because her statement regarding the bricks did not correspond with Carter's description of events to police. Clearly, therefore, counsel's decision not to call Clark was strategic, and we will not second-guess that decision on appeal.[28]

(e) Carter also claims that counsel should have offered into evidence the photograph depicting Walton and Patricia in bed together. As noted above, however, counsel elected not to introduce any evi-

---

[25] See *Roland v. State*, 266 Ga. 545-546 (2) (468 SE2d 378) (1996); *Branton v. State*, 258 Ga. App. 221, 224 (3) (573 SE2d 475) (2002) (fact that trial counsel obtained an acquittal on one of the charges against the defendant "strongly supports the conclusion that the assistance rendered by the attorney fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render").

[26] See *Strong v. State*, 275 Ga. 465, 466 (2) (a) (569 SE2d 523) (2002).

[27] See id.

[28] See *Washington*, supra at 659 (3) (c); *Lawrence v. State*, 274 Ga. 794, 795 (3) (560 SE2d 17) (2002).

dence or call witnesses so that he could open and conclude final arguments, a recognized trial strategy.[29]

(f) Carter asserts that counsel failed to inform him that he could withdraw or appeal his guilty plea. Carter has presented no argument, citation of authority, or record reference supporting this allegation. Accordingly, it is deemed abandoned.[30]

(g) Carter argues that counsel was deficient in failing to file a motion to remove a jury member who had a past conflict with Carter and allegedly turned the other jurors against him. According to counsel, however, Carter never informed counsel that he had a negative history with any of the jurors or that counsel should seek to remove a juror. We further note that this jury acquitted Carter of murder and aggravated assault. Under these circumstances, the trial court did not err in rejecting this allegation.

(h) Carter has pointed to no evidence supporting his claim that trial counsel "misrepresented important facts in the case and failed to keep [him] abreast of the important developments of the case."

(i) Although Carter claims that counsel failed to file a *Brady*[31] motion, the record reflects that such a motion was filed by the attorney initially appointed to represent Carter. We find no deficiency in trial counsel's decision not to file a duplicative pleading.

(j) Carter argues that trial counsel should have filed a motion to suppress evidence seized from several residences. But "[i]t is not deficient to fail to file a motion which is frivolous."[32] And even assuming a deficiency occurred, to succeed on this claim, Carter must make a strong showing that the evidence would have been suppressed if an appropriate motion had been filed.[33] Carter has not made — or even attempted to make — such showing here.

(k) Carter claims that counsel did not permit him to attend any hearings on pretrial motions, but he has not pointed to any evidence that such hearings were held or that counsel prevented his attendance. Furthermore, he has not shown how this alleged conduct by counsel prejudiced his defense.

(l) Finally, Carter asserts that counsel "forced" him to testify at trial. Counsel disputed this claim at the motion for new trial hearing, asserting that he told Carter that "it was his life, not mine, and he had to make the decision." The trial court was authorized to believe counsel and reject Carter's claim.[34]

---

[29] See id.

[30] Court of Appeals Rule 27 (c) (2).

[31] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[32] (Punctuation omitted.) *Shorter v. State*, 239 Ga. App. 625, 626 (1) (521 SE2d 684) (1999).

[33] See id.

[34] In the argument section of his brief, Carter raises various other allegations of ineffectiveness not contained within his enumeration of error. We will not address these claims

5. Carter also argues that he was prejudiced by the seven-year delay between his conviction and the prosecution of his appeal. It appears that the attorney initially appointed to represent Carter at the motion for new trial stage and on appeal failed to do any work on the case. The trial court eventually removed that attorney and appointed Carter's current appellate counsel.

As we recently noted, a delay in the resolution of a defendant's motion for new trial and direct appeal may raise due process concerns.[35] But " 'the mere passage of time is not enough to constitute a denial of due process.' "[36] Carter must show that he has been prejudiced by the delay.[37] In other words,

> [u]nless it clearly appears that the delay prevented the presentation of an adequate appeal or impaired a defense which would otherwise be available to an appellant where a new trial is ordered due to trial error, an appellant has not suffered the prejudice which turns a post-trial delay into a violation of due process of law.[38]

Although the significant delay between Carter's trial and the motion for new trial proceedings, as well as this appeal, is not acceptable, we cannot find that the delay prejudiced him. On appeal, Carter argues that the delay prevented him from fully litigating his ineffective assistance of counsel claim. He points out that Vanessa Clark died between his trial and the new trial hearing. As discussed above, however, Carter's own testimony showed that counsel's decision not to call Clark as a witness at trial was a reasonable trial strategy. Her testimony was not necessary to analyze his claim. Carter also asserts that, at the hearing on his motion for new trial, trial counsel could not recall many details of the case. Again, however, the facts and circumstances actually recalled by counsel and Carter were sufficient to resolve his ineffective assistance allegations.

Carter asserts generally that he was prejudiced by the delay, but he has not shown that the time lapse impaired the presentation of his appeal or hindered his defense. Accordingly, he is not entitled to a reversal on this basis.[39]

6. Nevertheless, we agree with Carter that his conviction for possession of a firearm during the commission of a crime must be

---

because " 'a party cannot expand his enumerations of error through argument or citation in his brief.' " *Tackett v. State*, 257 Ga. App. 292, 293, n. 3 (570 SE2d 720) (2002).

[35] See *Spradlin v. State*, 262 Ga. App. 897, 899-903 (3) (587 SE2d 155) (2003).

[36] Id. at 901-902.

[37] See id. at 902; *Adams v. State*, 203 Ga. App. 794, 796 (2) (418 SE2d 68) (1992).

[38] (Punctuation omitted.) *Spradlin*, supra.

[39] See id.

reversed under our recent decision in *Prather v. State*.[40] The State charged Carter with possessing a "410 gauge shotgun[ ] during the commission of a crime, to wit: murder." And the trial court defined the crime for the jury as "possess[ing] a firearm during the commission of the crime of murder."

The jury, however, acquitted Carter of murder, finding him guilty instead of the lesser offense of voluntary manslaughter. In *Prather*, we determined that where the court's instruction only authorizes the jury to convict a defendant of possessing a firearm during the commission of a murder, but the jury finds the defendant guilty of voluntary manslaughter, rather than murder, "the conviction [for] possession of a firearm during the commission of a crime must be reversed."[41] Accordingly, we reverse Carter's conviction for this crime and vacate the sentence imposed by the trial court.

7. Carter also argues that the trial court erred in determining his sentence for possession of a firearm during the commission of a crime. Because we reversed his conviction for this charge in Division 6, this claim of error is moot.[42]

8. Finally, Carter challenges his sentence for possession of a firearm by a convicted felon, the charge to which he pled guilty. At sentencing, the trial court ordered Carter to serve 20 years in prison for voluntary manslaughter. It then sentenced Carter to five years incarceration for possession of a firearm during the commission of a crime, to be served consecutively to the sentence for voluntary manslaughter. With respect to the felon in possession charge, the trial court sentenced Carter to five years in prison, stating that the sentence would run concurrently to the sentence for possession of a firearm during the commission of a crime.

On appeal, Carter argues that, because the trial court improperly convicted and sentenced him for possession of a firearm during the commission of a crime, his concurrent sentence for possession of a firearm by a convicted felon is fundamentally flawed. We agree. In Division 6, we reversed Carter's conviction for possession of a firearm during the commission of a crime and vacated that sentence. Thus, the court's sentence for felon in possession is dependent on — or concurrent to — a vacated sentence for a reversed conviction. Under these circumstances, we must vacate the sentence for possession of a firearm by a convicted felon and remand the case for resentencing on that conviction.[43]

---

[40] 259 Ga. App. 441 (576 SE2d 904) (2003).

[41] Id. at 443 (1).

[42] Carter's claim that trial counsel misinformed him about his potential sentence for this crime is similarly moot.

[43] See *Nunery v. State*, 229 Ga. App. 246, 247 (1) (493 SE2d 610) (1997).

*Judgment affirmed in part and reversed in part. Sentence vacated in part and case remanded for resentencing. Smith, C. J., and Miller, J., concur.*

DECIDED JANUARY 7, 2004.

John G. Wolinski, for appellant.
Peter J. Skandalakis, District Attorney, Matthew T. McNally, Assistant District Attorney, for appellee.