S10A0363. HENDERSON v. HAMES.
(697 SE2d 798)

NAHMIAS, Justice.

In 2002, Joshua Hames was convicted of misuse of a firearm while hunting and felony murder in the shooting death of his brother

Sam. The trial court sentenced him to life in prison, and this Court affirmed on direct appeal. See *Hames v. State*, 278 Ga. 182 (598 SE2d 459) (2004). In 2005, Hames filed a pro se petition for habeas corpus, which the habeas court granted. The Warden appeals. We affirm because, as explained below, the habeas court correctly held that Hames's indictment and convictions are void.

1. On direct appeal, this Court summarized the evidence presented at trial, viewed in the light most favorable to the verdict, as follows:

> Hames and his brother Sam went hunting on their parents' land. The two separated so as to hunt on different areas. Hames spotted something which, according to his subsequent statement and testimony, he mistook for a crouching animal, such as a bobcat or wildcat. In fact, what he saw was the victim, Sam. Hames aimed at the crouching figure through the scope on his rifle and fired, killing his brother.

*Hames*, 278 Ga. at 182.

In 2002, a Walton County grand jury indicted Hames for malice murder, two counts of felony murder, and the predicate felonies of misuse of a firearm while hunting and aggravated assault. See id. Rejecting the State's argument that Hames intentionally shot his brother and had motive to do so, the jury acquitted him of malice murder, aggravated assault, and felony murder based on aggravated assault. See *Hames*, 278 Ga. at 185. However, the jury convicted him of misuse of a firearm while hunting and felony murder based on that crime. The trial court merged the two convictions and sentenced Hames to life in prison for the felony murder. See id. at 182. Hames was represented on direct appeal by the same attorney who had represented him at trial.

On June 1, 2005, Hames filed a pro se petition for habeas corpus in Calhoun County, which was amended and then transferred to Baldwin County in October 2007. The petition was amended again, and the habeas court held an evidentiary hearing on August 29, 2008.

On June 10, 2009, the habeas court granted the petition on three grounds: (1) the indictment was void because it failed to charge an essential element of the offense of misuse of a firearm while hunting, namely, that Hames "consciously disregard[ed] a substantial and unjustifiable risk that his act or omission [would] cause harm to or endanger the safety of another person," OCGA § 16-11-108 (a); (2) the State failed to prove the mens rea necessary for conviction; and (3) Hames received ineffective assistance of trial counsel. Hames alleged multiple instances of deficient performance, including, as

related to the first two grounds for granting the writ, his counsel's failure to challenge the defective indictment or file a motion for directed verdict of acquittal at trial and the failure to raise these arguments on direct appeal. The habeas court ordered Hames's convictions to be vacated but did not order his immediate release to allow the Warden the opportunity to pursue an appeal.

2. In reviewing the grant or denial of a petition for habeas corpus, this Court accepts the habeas court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts. See *Schofield v. Meders*, 280 Ga. 865, 866 (632 SE2d 369) (2006). In general, " 'any issue raised and ruled upon in the petitioner's direct appeal may not be reasserted in habeas corpus proceedings, and . . . claims that could have been raised on direct appeal but are raised for the first time in habeas corpus proceedings are procedurally defaulted, unless the petitioner meets the "cause and prejudice" test.' " Id. at 865 (citations omitted); OCGA § 9-14-48 (d).[1] However, where the same attorney represented the petitioner at trial and on direct appeal, the petitioner may raise an ineffective assistance of counsel claim for the first time in a habeas corpus proceeding. See *Turpin v. Christenson*, 269 Ga. 226, 231 (497 SE2d 216) (1998); *Ryan v. Thomas*, 261 Ga. 661, 661 (409 SE2d 507) (1991). See also OCGA § 9-14-48 (d) (stating that ineffective assistance of counsel claims may be procedurally barred "in the event the petitioner had new counsel subsequent to trial").

To succeed on an ineffective assistance of counsel claim, a habeas petitioner must show that counsel's performance was professionally deficient and that, but for counsel's unprofessional conduct, there is a reasonable probability that the outcome of the trial or direct appeal would have been different. See *Strickland v. Washington*, 466 U. S. 668, 694 (104 SC 2052, 80 LE2d 674) (1984); *Miller v. State*, 283 Ga. 412, 415 (658 SE2d 765) (2008). In some cases, a habeas petitioner can show more than a "reasonable probability" that the outcome would have been different, because if the petitioner's argument is correct, raising the issue at trial or on direct appeal would have resulted in a new trial or a directed verdict of acquittal as a matter

---

[1] OCGA § 9-14-48 (d) provides as follows:

The [habeas] court shall review the trial record and transcript of proceedings and consider whether the petitioner made timely motion or objection or otherwise complied with Georgia procedural rules at trial and on appeal and whether, in the event the petitioner had new counsel subsequent to trial, the petitioner raised any claim of ineffective assistance of trial counsel on appeal; and absent a showing of cause for noncompliance with such requirement, and of actual prejudice, habeas corpus relief shall not be granted. In all cases habeas corpus relief shall be granted to avoid a miscarriage of justice. . . .

of law. In this situation, the ineffectiveness analysis often becomes coextensive with the analysis of the legal issue that counsel failed to raise. See, e.g., *Upton v. Parks*, 284 Ga. 254, 255 (664 SE2d 196) (2008) (where a habeas petitioner alleges a violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), " " "the underlying claim and the prejudice analysis necessary to satisfy the cause-and-prejudice test are coextensive." " " (citations omitted)). An indictment that reasonably proficient counsel should have realized was void is one such claim. See *Smith v. Hardrick*, 266 Ga. 54, 56 (464 SE2d 198) (1995) (affirming grant of habeas relief because indictment was void); *Hopper v. Hampton*, 244 Ga. 361, 361 (260 SE2d 73) (1979) ("The general rule is that substantive defects, such as the indictment fails to allege conduct which constitutes a crime, are cognizable on habeas corpus because the entire proceedings were void ab initio.").

These sorts of claims are not barred by res judicata, because they were not actually litigated, due to counsel's ineffectiveness, at trial or on direct appeal. Likewise, such claims are not procedurally defaulted, because counsel's prejudicial failure to raise them constitutes both a Sixth Amendment violation and cause and prejudice to overcome the procedural bar to reach that result. See *Battles v. Chapman*, 269 Ga. 702, 702 (506 SE2d 838) (1998) ("[A] habeas petitioner who meets both prongs of the *Strickland* test has established the necessary cause and prejudice to overcome the procedural bar of OCGA § 9-14-48 (d).").

3. Hames had the same counsel at trial and on direct appeal, and the two principal issues he raises, which he contends his counsel was ineffective in failing to raise at trial and on direct appeal, fall into this category if his legal argument is correct. The legal issue at the heart of Hames's habeas petition rests on the identification of the essential elements of the crime created by OCGA § 16-11-108. That statute makes it a misdemeanor, "while hunting wildlife," to

use[ ] a firearm or archery tackle in a manner to endanger the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm to or endanger the safety of another person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation . . . .

OCGA § 16-11-108 (a). The same conduct constitutes a felony where, as charged in the indictment against Hames, it "results in serious bodily harm to another person." Id.

The indictment against Hames did not charge that he "con-

sciously disregard[ed] a substantial and unjustifiable risk that his act or omission w[ould] cause harm to or endanger the safety of another person." Hames contends that this language identifies the mens rea necessary to commit the crime created by OCGA § 16-11-108 and that its omission rendered void his indictment on that charge and the related felony murder charge. The habeas court agreed with this contention, and we do as well.

An indictment is void to the extent that it fails to allege all the essential elements of the crime or crimes charged. See *Davis v. State*, 272 Ga. 818, 819 (537 SE2d 327) (2000); *State v. Eubanks*, 239 Ga. 483, 486 (238 SE2d 38) (1977). This principle is longstanding, see, e.g., *Wright v. State*, 168 Ga. 690, 690 (148 SE 731) (1929) ("It is a well-recognized rule that every indictment must charge every essential element of an offense." (citation omitted)), and it has a constitutional foundation, see *Lizana v. State*, 287 Ga. 184, 185 (2) (695 SE2d 208) (2010) ("'(D)ue process of law requires that the indictment on which a defendant is convicted contain all the essential elements of the crime.'" (citation omitted)). Mens rea is an essential element of a crime. See *Ward v. State*, 271 Ga. 648, 653 (520 SE2d 205) (1999); *Bacon v. State*, 209 Ga. 261, 263 (71 SE2d 615) (1952). Thus, the commission of a crime requires "a joint operation of an act or omission to act [or actus reus] and intention or criminal negligence [or mens rea]." OCGA § 16-2-1 (a).

OCGA § 16-11-108 (a) spells out the two components of the mens rea necessary to violate the statute. As relevant to this case, there could be no violation unless Hames, while hunting wildlife, used a firearm in a manner endangering the bodily safety of his brother

[(1)] *by consciously disregarding a substantial and unjustifiable risk* that his act or omission w[ould] cause harm to or endanger the safety of another person *and* [(2)] *the disregard constitute[d] a gross deviation from the standard of care* which a reasonable person would exercise in the situation.

(Emphasis supplied.)

Despite the "and," the State alleged only part of the required mens rea when it indicted Hames. Thus, Count 5 of the indictment charged Hames with the felony "misuse of hunting equipment" in that he did, on October 11, 2002,

while hunting wildlife, use a firearm in a manner constituting a gross deviation from the standard of care which a reasonable person would exercise in the situation, to wit: aim

and shoot without clearly identifying his target, and did thereby cause serious bodily harm to Samuel Hames by shooting Samuel Hames, in violation of O.C.G.A. § 16-11-108.

The related felony murder charge, Count 2, incorporated Count 5 as the predicate felony. The indictment thus omitted entirely any reference to the statutory requirement that Hames "consciously disregard[ ] a substantial and unjustifiable risk that his act or omission will cause harm to or endanger the safety of another person."

The Warden disputes this conclusion, claiming that the indictment sufficiently alleged the mens rea by charging Hames with "aim[ing] and shoot[ing] without clearly identifying his target." Aiming and shooting without a clearly identified target may well constitute a gross deviation from the standard of care a reasonable hunter should use. However, as the habeas court explained, a hunter's aiming and shooting a firearm without clearly identifying the target amounts to "a substantial and unjustifiable risk" of harm to other persons only if other persons are likely in the area, and only if the shooter cannot see the target clearly enough to determine that it is not a human being. Furthermore, to establish "conscious disregard," the State would also have to show that the shooter was conscious, or aware, of that risk, i.e., that he actually knew that a person was likely in the area toward which he was shooting. Even then, the necessary mens rea would be absent if the shooter thought that he had clearly identified a non-human target — say, for instance, the large, predatory cat that Hames says he believed he was shooting at when he tragically shot and killed his brother.

Thus, the indictment failed to charge Hames with the full mens rea necessary to commit the crime of misuse of a firearm while hunting. As a result, the prosecution was able to argue in closing that recklessness or even negligence would suffice for a conviction as long as the conduct constituted a gross deviation from the standard of care. The jury instructions charged the elements of OCGA § 16-11-108 twice, the first time based on the language of the indictment — omitting the conscious disregard of a substantial risk component — and the second time using the statutory language. In sum, due to the omission of an essential element, the indictment was defective, the prosecution argument was improper, and the jury instructions were insufficient.

The decision not to raise the issue was not a reasonable tactic or trial strategy by Hames's counsel. The uncharged component of the mens rea for a conviction under OCGA § 16-11-108 was not difficult to discern or the product of esoteric or unpredictable judicial

decisions. Instead, it is found in the plain language of the statute. See *Turpin v. Helmeci*, 271 Ga. 224, 226 (518 SE2d 887) (1999) ("[T]he result in this case does not require trial counsel to predict what decisions will be issued in the future. Rather, it affirms that counsel must adequately research the law when choosing trial strategy."). Indeed, Hames's counsel admitted at the habeas hearing that he simply "failed to notice" this dispositive legal issue. Accordingly, the habeas court correctly held that Hames's convictions for felony misuse of a firearm while hunting and felony murder are void and must be vacated.

4. The habeas court further found that the State failed to introduce sufficient evidence to enable a rational jury to find Hames guilty beyond a reasonable doubt of those two crimes. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979). Consequently, had trial counsel moved for a directed verdict of acquittal, it would have been granted. If the habeas court was right, not only must Hames's convictions be vacated, but he must be released because the State is barred by double jeopardy from retrying him on those charges, which were the only charges on which the jury did not acquit him. See *Burks v. United States*, 437 U. S. 1, 10-11, 16-18 (98 SC 2141, 57 LE2d 1) (1978); *Jones v. State*, 272 Ga. 900, 904-905 (537 SE2d 80) (2000).

The State was required to prove, beyond a reasonable doubt, that Hames "consciously disregard[ed] a substantial and unjustifiable risk" of bodily harm to another when he fired his weapon that fateful day. But the habeas court determined that the "undisputed evidence presented at the trial establishes that the circumstances known to Petitioner at the time would not have led a reasonable person to believe that there was a risk from which bodily injury would probably result." The habeas court examined the trial record and made the following factual findings:

> Petitioner and his brother were hunting on their own land with no other hunters or any other people around. Prior to going out to hunt, the boys agreed where on the property they each would hunt in an effort to ensure they did not cross paths. At the time of the unfortunate incident, Samuel Hames was not where the boys had agreed Samuel would hunt nor was he wearing blaze orange. Petitioner's neighbors had recently seen what they believed to be a large, wild cat in the area, and they had shared that information with Petitioner shortly before the incident occurred. The State adduced no evidence contradicting any of this evidence or otherwise establishing that Petitioner had reason to know or suspect that Samuel Hames (or any other person) was

likely to be where the incident occurred or and [sic], therefore, likely to be injured by Petitioner's conduct. On this record, then, the State simply did not establish a substantial or unjustifiable risk at all. As such, Petitioner could not have "consciously disregarded" a risk the State failed to establish.

(Citations to the record omitted.)

The habeas court noted that in its post-hearing brief, the State did not point to "a single piece of evidence that it put on at trial to establish the elements of conscious disregard or a substantial and unjustifiable risk" and instead relied solely on a procedural bar argument. The Warden has done the same in his appeal brief in this Court, although at oral argument the Warden's counsel conceded that ineffective assistance of counsel would overcome the procedural bar and that, if the indictment was defective as alleged by Hames, he received ineffective assistance of counsel. See *Battles v. Chapman*, 269 Ga. at 702. The Warden has not argued, much less shown through references to the trial record, that the habeas court's factual findings about the trial record are clearly erroneous. Accordingly, we uphold the habeas court's findings and affirm its legal determination that the State failed to produce sufficient evidence at trial to authorize a rational jury to find Hames guilty beyond a reasonable doubt of felony misuse of a firearm while hunting and felony murder.

5. The habeas court also granted the petition based on several other findings of ineffective assistance of counsel. We need not address those determinations, because we have held above that the indictment was void for failing to allege an essential element of the crimes of misuse of a firearm while hunting and felony murder, that the evidence at trial was insufficient to support Hames's convictions beyond a reasonable doubt, and that his counsel was constitutionally ineffective in failing to raise these dispositive claims both at trial and on direct appeal. The writ of habeas corpus was properly granted, and Joshua Hames should be released from prison.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 12, 2010.

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellant.

*Morris, Manning & Martin, Holly A. Pierson, Powell Goldstein, William V. Custer IV*, for appellee.