S10A1668. MOON v. THE STATE.
S10A1671. MARTIN v. THE STATE.
S10A1672. MARTIN v. THE STATE.

(705 SE2d 649)

CARLEY, Presiding Justice.

In a joint trial, a jury found Appellants Clifton Dean Moon and Bobby Leon Martin guilty of felony murder during the commission of criminal attempt to commit armed robbery, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime, but not guilty of malice murder and possession of a handgun during the commission of malice murder. The trial court entered judgments of conviction on the guilty verdicts and sentenced both Appellants to life imprisonment for the felony murder charge, a consecutive five-year term for the charge of possession of a firearm by a convicted felon, and a consecutive five-year term for the charge of possession of a firearm during the commission of a crime. Appellants appeal after the denial of separate motions for new trial.*

1. Construed most strongly in support of the verdicts, the evidence shows that, on January 4, 2006, Martin and Torena Johnson, who was driving her Jeep Cherokee, picked up Moon at an apartment complex. Moon was wearing a red shirt and carrying a black tote bag. The three drove to an apartment owned by Kentora Latruan Thomas, a drug dealer, so that Ms. Johnson could buy marijuana. On the way there, Moon stated that Thomas "was sweet," which is slang for a potential robbery target, and that "we can get him." After leaving Martin and Moon in the Jeep, Ms. Johnson went to Thomas' apartment and purchased marijuana from Thomas. Also in Thomas' apartment at this time were Lenika Mattox and Thomas' cousin Pedro. As Ms. Johnson was about to leave, there were two knocks at the door and she opened the door. Two masked gunmen entered the apartment and told Thomas to "give it up." According to Ms. Mattox and Pedro, one of the gunmen was wearing a red shirt. Ms. Mattox testified that Ms. Johnson then hit one of the gunmen yelling, "No, y'all, don't do it like that, we

---

* The crimes occurred on January 4, 2006, and the grand jury returned the indictment on April 5, 2006. The jury found Martin guilty on December 15, 2006, and found Moon guilty on December 18, 2006. The trial court entered the judgments of conviction and sentences on December 27, 2006. A motion for new trial was filed by Martin on January 2, 2007, amended on March 13, 2008 and February 4, 2009, and denied on August 3, 2009. Martin filed a notice of appeal on September 1, 2009. He filed a motion for reconsideration on August 24, 2009, which was denied on November 12, 2009. He filed a second notice of appeal on November 19, 2009. A motion for new trial was filed by Moon on December 29, 2006, amended on December 21, 2007 and February 16, 2009, and denied on January 4, 2010. Moon prematurely filed a notice of appeal on August 26, 2009. Both cases were docketed in this Court for the September 2010 term and orally argued on October 18, 2010.

weren't supposed to do it like that, ya'll." As Thomas tried to force the two gunmen out of his apartment, he was shot three times. He ultimately died in the hallway.

Several other people heard the gunshots and came out to investigate, where they saw two men fleeing the scene, one of whom was wearing a red shirt. They were seen getting into a light-colored Jeep. As Ms. Johnson was leaving Thomas' apartment, she turned to Ms. Mattox and stated that "it wasn't supposed to happen like that." Ms. Johnson then left. Shortly after this, at Ms. Johnson's apartment in front of her, Martin, Martin's sister Maria Fair, and Josh Jackson, Moon admitted that "he shot dude." Jackson testified that, in response to a question from Ms. Johnson as to why Moon shot Thomas, Moon replied that he did not have any choice because Thomas "bucked."

Following the murder and in exchange for a plea deal, Ms. Johnson assisted the police in recording incriminating telephone conversations with Martin. The police arrested Martin on January 7, 2006, and, in the course of a search of his residence, the police recovered a Taurus 9mm handgun inside a paper bag located in a bathroom trash can. A projectile recovered during the autopsy as well as a shell casing from the crime scene matched the handgun. The evidence was sufficient for a rational trier of fact to find Appellants guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Case Number S10A1668*

2. Moon contends that the trial court erred in denying his motion to sever his trial from that of his co-defendant Martin. He claims that there was more direct evidence against Martin, including similar transaction evidence, that raised the probability of spillover evidence, and that the defenses of the two co-defendants were antagonistic.

> In a murder case where the death penalty is not sought, the trial court has broad discretion to grant or deny a motion for severance. [Cits.] In ruling on a severance motion, the trial court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses. [Cit.] It is not enough for the defendant to show that he or she would have a better chance of acquittal at a separate trial or that the evidence against a

> co-defendant is stronger. [Cits.] Rather, the defendant must show clearly that a joint trial will prejudice his or her defense, resulting in a denial of due process. [Cit.]

*Krause v. State*, 286 Ga. 745, 749 (5) (691 SE2d 211) (2010). In the present case, there was no likelihood of confusion by the jury as to the evidence and the law because there were only two defendants "who were jointly indicted for the same offenses, which involved the same witnesses, and the evidence indicated that they acted in concert. [Cit.]" *Oliver v. State*, 253 Ga. 284 (2) (319 SE2d 856) (1984). Moreover, the danger of spillover evidence was minimal because the bulk of the evidence equally implicated both defendants as the two gunmen. The sole evidence relied on by Moon as implicating only Martin was the telephone calls overheard by the police between Ms. Johnson and Martin as well as the handgun recovered by the police upon Martin's arrest. However, Martin's statements recorded in these phone calls would have been admissible against Moon in a separate trial as statements of a co-conspirator. OCGA § 24-3-5; *Styles v. State*, 279 Ga. 134, 136 (2) (610 SE2d 23) (2005). Moreover, there was ample evidence incriminating Moon, including numerous eyewitnesses who described one of the fleeing gunmen as wearing the same clothes that Moon wore on the day of the crime and witness testimony of statements made by Moon admitting that he shot the victim. With respect to the similar transaction evidence admitted against Martin, the trial court properly instructed the jury on its consideration, telling the jury that it did not apply to Moon. Furthermore, " '[t]he mere fact that the case against (one) [defendant] was stronger than the case against (the other) [does] not necessitate a separate trial.' [Cit.]" *Oliver v. State*, supra at 285 (2). Finally, Moon's claim that the defenses of the co-defendants were antagonistic is belied by the record. Both defendants denied being present at the crime scene and neither attempted to point the blame at the other. They simply argued that the prosecution had failed to meet its burden of proof. Moreover, "unless there is a showing of resulting prejudice, antagonistic defenses do not automatically require a severance. [Cits.]" *Green v. State*, 274 Ga. 686, 688 (2) (558 SE2d 707) (2002). Since Moon has failed to make a showing of prejudice, the trial court did not abuse its discretion in denying severance. See *Burgess v. State*, 276 Ga. 185, 188 (4) (576 SE2d 863) (2003).

3. Moon next contends that the trial court improperly limited his cross-examination of Ms. Fair and Investigator Saulters. Moon sought to question both witnesses concerning a previous home invasion robbery that Martin and Ms. Fair were suspected of committing, which was allegedly similar to the crime at issue in the

present trial.

"Although the appellant is entitled to a thorough and sifting cross-examination of a witness, the scope of such cross-examination is within the sound discretion of the trial court. [Cits.]" *White v. State*, 253 Ga. 106, 110 (4) (317 SE2d 196) (1984). "A trial court does not abuse its discretion in preventing questions . . . that could confuse or mislead the jury. [Cits.]" *Davis v. State*, 304 Ga. App. 355, 363 (5) (696 SE2d 381) (2010). The questioning of Ms. Fair and Investigator Saulters concerning the previous home invasion robbery was irrelevant to the present case and would have led to jury confusion. There was never enough evidence to file charges against Martin for that previous crime. Presumably, if there had been enough evidence, the prosecution would have sought to introduce it as a similar transaction. Even if this evidence had been allowed in, it would not have exculpated Moon as there were two masked gunmen. Moreover, the trial court did allow Moon limited questioning as to the prior crime during his cross-examination of Investigator Saulters. From a review of the record, it appears that Moon was able to elicit testimony concerning the similar aspects of the prior crime and the present crime and also why the investigator mentioned the prior crime in a pre-trial interview with Ms. Fair. Therefore, the trial court did not abuse its discretion in limiting the scope of cross-examination as to the earlier home invasion.

4. Moon contends that the trial court erred by allowing the prosecution to elicit testimony from Investigator Quinton Ward regarding a prior consistent statement made by Herbert Brown, Martin's cellmate, during a pre-trial interview. Moon argues that the investigator's testimony improperly bolstered the credibility of Brown's statements. " '[A] witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination.' [Cits.]" *Baugh v. State*, 276 Ga. 736, 738 (2) (585 SE2d 616) (2003). According to the record, on cross-examination, Martin's counsel questioned Brown about the federal drug charges pending against him and whether he would receive a lesser sentence as part of a plea deal if he cooperated with the government by testifying against Martin and Moon. This is a classic example of an implication of improper motive for testifying. However, " '[t]o be admissible to refute the allegation of . . . improper motive, the prior statement must "predate the alleged fabrication, influence, or motive." ' [Cit.]" *Mister v. State*, 286 Ga. 303, 306 (4) (687 SE2d 471) (2009). Brown made his prior consistent statement to Investigator Ward in an interview only one week before trial, which was after Brown signed the plea deal. Since the prior statement did not predate the improper

motive, the statement constituted hearsay, and the trial court erred in permitting Investigator Ward to testify about it. *Mister v. State,* supra at 307 (4). See also *Duggan v. State,* 285 Ga. 363, 366 (2) (677 SE2d 92) (2009). However, "when the hearsay is a witness's prior consistent statement, the erroneous admission of the witness's hearsay statement is reversible error 'if it appears likely that the hearsay contributed to the guilty verdict.' [Cit.]" *Baugh v. State,* 276 Ga. 736, 739 (2) (585 SE2d 616) (2003). The statement at issue, which was allegedly made by Martin to Brown while they were both in jail, is "if he hadn't of bucked the jack we wouldn't have to do him. He bucked on [Moon]. We had to do him." The record, aside from this prior consistent statement, is replete with evidence that Moon was one of the gunmen, including testimony by witness Jackson that Moon admitted in front of several people that he had to shoot Thomas because he "bucked." "Given the strength of this evidence, we conclude that the error in admitting [Brown's] prior statement was harmless." *Duggan v. State,* supra at 367 (2).

5. Moon claims that the trial court improperly removed juror Shamika Patterson after deliberation had begun. OCGA § 15-12-172 provides that the trial court may remove a juror "at any time, whether before or after final submission of the case to the jury . . . [if] good cause [is] shown to the court [that the juror is] unable to perform his duty, or . . . for other legal cause. . . ." "The trial court must exercise its discretion in removing a juror, and it may affect such a removal even after deliberations have begun. [Cit.]" *State v. Arnold,* 280 Ga. 487, 489 (629 SE2d 807) (2006). However, " '[t]here must be some sound basis upon which the trial judge exercises his discretion to remove the juror.' [Cit.]" *State v. Arnold,* supra. According to the record, after deliberation had begun, the trial court was alerted to the fact that Ms. Patterson may be more acquainted with the defendants or the defendants' family than she let on during voir dire. The trial court also received a note from another juror stating that Ms. Patterson repeatedly made statements during deliberation about knowing the defendants and many witnesses. The trial court then decided to hold an inquiry of all the jurors in order to determine if Ms. Patterson had been truthful in her voir dire responses. From the jury foreman, the trial court learned that Ms. Patterson knew more of the prosecution's witnesses than she conveyed during voir dire. Other jurors indicated that Ms. Patterson repeatedly referenced her knowledge of the defendants' and victim's families, that her boyfriend associated with many people involved in the case, and that she had indicated that she felt she was in a difficult position by having to make a decision whether to find the defendants guilty and then return to her community. Moreover, the trial court learned that Ms. Patterson had made extra-judicial comments, such

as referring to one of the witnesses as a drug dealer, although no evidence of this claim was presented.

Moon asserts that the trial court removed Ms. Patterson because she was the only holdout juror and thus abused its discretion. See *Semega v. State*, 302 Ga. App. 879, 882 (1) (691 SE2d 923) (2010); *Mason v. State*, 244 Ga. App. 247, 249 (1) (535 SE2d 497) (2000). However, the cases cited by Moon are distinguishable. In both *Semega* and *Mason*, the improperly removed jurors were not refusing to deliberate but instead held an honest disagreement with the other jurors and had already participated in careful consideration and discussion of the case. Moreover, Ms. Patterson was not removed for refusing to deliberate but because of concerns over her truthfulness and impartiality as well as her extra-judicial comments. There were no allegations by other jurors in *Semega* or *Mason* that the improperly removed jurors were acquainted with any of the principals or witnesses in the case or had mentioned how difficult it would be to go back to their neighborhood after finding the defendant guilty.

Accordingly, taking into consideration all of the above, including the thorough inquiry conducted by the trial court and the testimony of the other jurors, we conclude that the trial court had ample factual and legal support for its decision to remove Ms. Patterson and thus did not abuse its discretion. See *State v. Arnold*, supra at 490; *Reynolds v. State*, 271 Ga. 174, 175 (2) (517 SE2d 51) (1999); *Hillman v. State*, 296 Ga. App. 310, 313 (3) (674 SE2d 370) (2009); *Norris v. State*, 230 Ga. App. 492, 495 (5) (496 SE2d 781) (1998).

6. Moon further asserts that the trial court's inquiry and its manner of questioning the jury concerning Ms. Patterson constituted an abuse of discretion. However, "[w]here the basis for [a] juror's incapacity is not certain or obvious, 'some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion.' [Cit.]" *State v. Arnold*, supra at 489. In *Arnold*, the trial court, when faced with allegations of improper behavior by the foreman juror, initially questioned only him and then determined that the entire jury should be questioned in order to investigate the matter further. *State v. Arnold*, supra at 488. Similarly, in the present case, the trial judge, after receiving evidence that Ms. Patterson may not have been entirely forthcoming during voir dire, initially questioned the jury foreman as well as Ms. Patterson. After this initial inquiry, the trial judge decided that a further investigation was necessary in order to determine whether Ms. Patterson's behavior warranted removal. The trial court questioned each juror separately with essentially the same questions and was very careful not to elicit any votes. Moreover, neither Moon nor Martin ever asserted any objection to the trial court's lines of questioning or to

the manner of inquiry. Therefore, the trial court's "inquiries were appropriate to [its] determination as to how to exercise its discretion." *Berry v. State*, 282 Ga. 376, 377 (2) (651 SE2d 1) (2007).

7. Moon next contends that the trial court erred by not declaring a mistrial after jurors divulged Ms. Patterson's vote. The record shows that although the trial court was very careful in trying not to elicit the vote of any juror during its inquiry regarding Ms. Patterson, two jurors inadvertently revealed that Ms. Patterson was not willing to enter a guilty verdict. However, "[w]hen the trial court does not seek to obtain information as to the jury's [votes, a juror's] volunteering the information not sought does not require reversal." (Emphasis omitted.) *Tanner v. State*, 242 Ga. 437, 438 (2) (249 SE2d 238) (1978).

8. Moon's final contention is that the trial court erred in denying the motion for new trial because his trial counsel provided ineffective assistance by representing Moon despite a conflict of interest. Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), "[t]o prevail on a claim of ineffective assistance of trial counsel, [Moon] bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. [Cit.]" *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004). When reviewing an ineffective assistance claim, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. [Cits.]" *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

"In order for [Moon] to prevail on his claim that his attorney was operating under a conflict of interest that violated his right to counsel, he must show an actual conflict of interest that adversely affected his attorney's performance. [Cit.]" *Turner v. State*, 273 Ga. 340, 342 (2) (a) (541 SE2d 641) (2001). Moon claims that his counsel, as a result of working in the public defender's office, obtained information during trial that could be used to impeach a testifying witness for the prosecution but chose not to use the information on cross-examination of the witness.

> [I]n cases where an alleged conflict of interest is based upon defense counsel's prior representation of a prosecution witness, we must examine the particular circumstances of the representations to determine whether counsel's undivided loyalties remain with his or her current client, as they must. In this regard, we believe that the factors that arguably may interfere with effective cross-examination . . . include: "((1)) concern that the lawyer's pecuniary interest in possible future business may cause him (or her) to avoid vigorous cross-examination which might be embarrassing

or offensive to the witness; (and (2)) . . . the possibility that privileged information obtained from the witness (in the earlier representation) might be relevant to cross-examination." [Cit.] Another factor that should be considered in determining whether an actual or potential conflict of interest rendered trial counsel ineffective, is whether "the subject matter of the first representation is substantially related to that of the second." [Cit.]

*Hill v. State*, 269 Ga. 23, 24 (2) (494 SE2d 661) (1998). In the present case, all of the factors cited above favor the conclusion that there was no conflict of interest. According to the record, the representation of the testifying witness in a prior case was by another attorney in the public defender's office, not Moon's counsel. This prior representation was concluded and was wholly unrelated to the present case. Although a petition for revocation of the witness' probation due to an outstanding arrest warrant was filed during the trial, the witness was assigned an attorney from the conflict defender's office, an office unconnected to the public defender's office, in order to avoid a conflict of interest. Moreover, there was no evidence that Moon's trial counsel held out any hope of future pecuniary gain from the testifying witness, especially since he was not engaged in the private practice of law. Finally, "nothing in the record suggests that privileged information known to defense counsel due to [the] earlier representation of [the witness] prevented him from conducting a thorough cross-examination. . . ." *Hill v. State*, supra at 25 (2). Although Moon argues that his attorney was ineffective because he did not impeach the witness on cross-examination even though he had impeachment evidence, Moon's attorney stated at the motion for new trial hearing that he did not impeach the witness because his testimony was not harmful to Moon. After a review of the record, the only significant testimony given by the witness was that he heard Ms. Johnson and Moon argue about the gun's safety switch. The witness had no personal knowledge of the actual shooting or who was involved. Therefore, after consideration of the relevant factors, we hold that Moon's trial counsel did not represent him under an impermissible conflict of interest.

### Case Number S10A1671

9. Martin first contends that the trial court erred by denying the motion for new trial despite the fact that his trial counsel provided ineffective assistance. As stated above, in order to prevail on a claim of ineffective assistance of trial counsel, Martin must show that his attorney rendered deficient representation and that the deficiency

caused actual prejudice. *Strickland v. Washington*, supra. Neither prong of *Strickland* is satisfied in the present case. With respect to the first requirement, Martin " 'must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct.' [Cit.]" *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002). Martin claims that the failure of his attorney to object to the admission of a DVD containing a recording of a five-hour police interview with Ms. Johnson allowed the jury to hear damaging hearsay statements against him which prejudiced his case. However, an attorney's " 'decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel. (Cits.)' [Cit.]" *Beck v. State*, 263 Ga. App. 256, 257 (1) (a) (587 SE2d 316) (2003). Certainly "[t]he making of objections falls within the realm of trial tactics and strategy and [thus] usually provides no basis for reversal of a conviction. [Cit.]" *Beck v. State*, supra. Furthermore, Martin's acquittal on the malice murder charge is a relevant factor which " 'strongly supports the conclusion that the assistance rendered by the attorney fell within that broad range of reasonably effective assistance. . . .' [Cit.]" *Carter v. State*, 265 Ga. App. 44, 50 (4) (c), fn. 25 (593 SE2d 69) (2004). See also *Fogarty v. State*, 270 Ga. 609, 613 (513 SE2d 493) (1999); *Goss v. State*, 305 Ga. App. 497, 499 (2) (699 SE2d 819) (2010); *Williams v. State*, 304 Ga. App. 592, 595 (4) (696 SE2d 512) (2010); *Henderson v. State*, 303 Ga. App. 898, 900 (1) (b) (695 SE2d 334) (2010); *Ellison v. State*, 296 Ga. App. 752, 756 (2) (c) (675 SE2d 613) (2009); *Port v. State*, 295 Ga. App. 109, 112 (2) (a) (671 SE2d 200) (2008); *Grier v. State*, 276 Ga. App. 655, 662 (4) (624 SE2d 149) (2005); *Caylor v. State*, 255 Ga. App. 362, 363 (566 SE2d 33) (2002); *Bradford v. State*, 221 Ga. App. 232, 235 (3) (471 SE2d 248) (1996).

Regarding the second requirement in *Strickland*, in order to establish prejudice, "a defendant [must] show 'a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.' [Cits.]" *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009). In his argument that the playing of the DVD prejudiced him, Martin only points to statements in the DVD that referred to his years in prison and several police references to him as a "thug." However, with respect to the reference to Martin's years in prison, the jury was already aware of the crime committed by him since it was admitted by the prosecution as a similar transaction. Any police statements calling him a "thug" do not rise to the requisite level of prejudice. Moreover, the trial court gave a curative instruction to the jury stating that they must disregard any police statements opining on the character of Martin. Therefore, Martin has failed to establish either that his trial counsel's perfor-

mance was deficient or that any deficiency prejudiced his case.

10. Martin's remaining enumerations raise substantially the same alleged errors raised by Moon concerning the trial court's removal of juror Shamika Patterson. As we have already addressed these errors above, we will not do so again here.

*Case Number S10A1672*

11. Martin filed a second notice of appeal with this Court after the trial court denied the motion for reconsideration. However, Martin's filing of his first notice of appeal divested the trial court of its jurisdiction over the case and any authority to alter the judgment. *Threatt v. Forsyth County*, 250 Ga. App. 838, 844 (2) (552 SE2d 123) (2001). Moreover, a motion for reconsideration does not toll the 30-day period for filing a notice of appeal. *Blackwell v. Sutton*, 261 Ga. 284 (404 SE2d 114) (1991). Since Martin's second notice of appeal was filed more than 30 days after the trial court's denial of the motion for new trial, the appeal is untimely. *Blackwell v. Sutton*, supra. Therefore, this appeal is dismissed.

*Judgments affirmed in Case Numbers S10A1668 and S10A1671. Appeal dismissed in Case Number S10A1672. All the Justices concur, except Nahmias, J., who concurs specially.*

NAHMIAS, Justice, concurring specially.

I join all of the majority opinion except the final sentence of the first paragraph of Division 9 on page 516, which states:

Furthermore, Martin's acquittal on the malice murder charge is a relevant factor which " 'strongly supports the conclusion that the assistance rendered by the attorney fell within that broad range of reasonably effective assistance . . . .' [Cit.]" *Carter v. State*, 265 Ga. App. 44, 50 (4) (c), fn. 25 (593 SE2d 69) (2004). See also [string cite].

Perhaps an acquittal is always "relevant" in some sense to the conclusion that a defense lawyer performed with reasonable effectiveness, since an acquittal is always better in some sense than a conviction. But in my view, the mere fact that a defendant was acquitted on one or more charges, *without more*, does not "strongly" support such a conclusion. An acquittal may be strongly relevant where the record reflects that defense counsel overcame what appears to be strong evidence against the defendant, as opposed to reflecting the simple absence of strong proof of the charge. See, e.g., *Williams v. State*, 304 Ga. App. 592, 595 (696 SE2d 512) (2010) (quoting the "strongly supports the conclusion" language after

explaining that, "despite the overwhelming evidence — including DNA identification and Williams's flight — trial counsel succeeded in obtaining a directed verdict of acquittal on one count and a jury verdict of acquittal on another"). An acquittal may also be more significant where the defendant was acquitted of many serious charges or of a charge that substantially reduced his sentence. See, e.g., *Carter v. State*, 265 Ga. App. 44, 44, 50, n. 25 (593 SE2d 69) (2004) (quoting the "strongly supports the conclusion" language after explaining that "counsel developed a successful defense to both the murder and aggravated assault charges, obtaining a not guilty verdict on both" and a conviction on voluntary manslaughter instead); *Green v. State*, 218 Ga. App. 648, 651 (a) (463 SE2d 133) (1995) (in the case that appears to be the original source of the "strongly supports the conclusion" language, explaining that "trial counsel secured acquittals of each felony charged in the indictment, i.e., burglary, rape, kidnapping, aggravated sodomy, and aggravated assault, with defendant's sole conviction being for the misdemeanor of sexual battery").

The majority opinion does not identify any particular strategy that defense counsel used to obtain Martin's acquittal on the malice murder and related firearm charge. Instead, those acquittals appear simply to reflect the evidence that the murder resulted from a robbery gone bad rather than a planned killing, with both Moon and Martin saying afterward that the victim drug dealer was killed because he "bucked" and resisted the robbery. See Maj. Op. at 512. Nor did the acquittals benefit Martin in any significant way. He was still convicted of murder (felony murder) and possession of a firearm during the commission of a crime, and he received the same sentences — including a life sentence — that he would have received had he been convicted on all counts, since the felony murder would have been vacated by operation of law and the related firearm conviction would have been merged as well.

In a recent case decided unanimously by this Court, the defendant had been convicted of felony murder based on misuse of a firearm while hunting and acquitted of three other serious charges — malice murder, aggravated assault, and felony murder based on aggravated assault. See *Henderson v. Hames*, 287 Ga. 534, 535 (697 SE2d 798) (2010). But he still received a life sentence, and the Court did not mention the acquittals as a factor "strongly support[ing]" the conclusion of effective performance by his counsel when we upheld the grant of habeas corpus relief based on the ineffective assistance that his counsel had provided. See id. at 537-540.

In sum, there are certainly cases in which a defendant's acquittal on one or more counts "strongly supports the conclusion" that his trial counsel provided constitutionally effective assistance. That

is why it is not improper for the language quoted by the majority to exist in the case law. But as revealed by closer analysis of both the nine Court of Appeals cases the majority cites and more than a dozen others that quote the same language, the circumstances discussed in the opinion often do not justify that statement. Instead, the language seems to have become a mantra quoted by the Court of Appeals whenever an ineffective assistance claim is raised in a case involving an acquittal on any count, however insignificant to the sentence and however unrelated to defense counsel's actual performance.

As far as I can tell, this Court had not previously endorsed or relied upon that mantra. The only case from this Court listed in the majority's long string cite, *Fogarty v. State*, 270 Ga. 609 (513 SE2d 493) (1999), was focused not on the standard *Strickland* analysis but on a conflict of interest issue. See id. at 609-613. The opinion does state, without citation of any authority (much less quotation of the "strongly supports" language), that the defendant's acquittal on six of the twelve charges against him demonstrated that his trial counsel was reasonably effective. See id. at 613. That conclusion may have been correct on the facts of that case, so *Fogarty* does not implicate the generalized approach the Court of Appeals has taken, and the facts of this case are quite different.

Here, the majority offers no reason to believe that Martin's acquittals did him any good or that they prove anything, much less "strongly support" a conclusion, about his trial counsel's effectiveness. Moreover, the discussion of the acquittals is entirely unnecessary to the result, because the majority explains why, for other reasons, Martin's ineffective assistance claim fails on both the deficient performance and prejudice prongs. See Maj. Op. at 515-517. I believe that we should not encourage the Court of Appeals to continue using the "strongly supports the conclusion" language as a mantra, unrelated to the specific facts regarding an acquittal, in its ineffective assistance cases, and this Court too should use that language only where the conclusion is actually supported by the circumstances of the case. For these reasons, I respectfully join all except the final sentence of the first paragraph of Division 9 of the majority opinion.

DECIDED FEBRUARY 7, 2011.

*Nathanael A. Horsley*, for Moon.

*Cook, Noell, Tolley & Bates, Edward D. Tolley, Ronald E. Houser*, for Martin.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher R.*

*Johnson, Assistant Attorney General*, for appellee.